Searcy *v.* Grow.

---

## SEARCY *v.* GROW.

15 117
79 488
15 117
104 663
15 117
118 396
15 117
d142 589
15 117
e145 686

IN a proceeding by an elector to contest the right to an office of a party returned as elected thereto at a general election, the defendant first moved to dismiss the proceedings; his motion being overruled, he declined to answer the statement filed by the contestant, and the Court, without proof by either party,

annulled the election. *Held,* that this was error, and that the proceeding should have been dismissed.

The public is interested in a contest of this character; it is not a matter solely between the parties to the record, and the popular will is not to be set aside upon the mere failure of a party to respond to charges alleged against his right by an individual elector. It is not sufficient that ample causes of contest be set forth in the statement filed by a contestant; their truth must be established by clear proof, before an election can be annulled.

Under the twenty-first section of article four of the Constitution of this State, a person holding the Federal office described in that section, is incapable of being elected to a State office; he cannot receive votes cast so as to give him a right to take the State office upon or after resigning the Federal office. The word " eligible " in this section means capable of being chosen, the subject of selection or choice.

The term " compensation," in section 21, art. 4 of the Constitution of this State, means the income of the office, not the profit over and above the necessary expenses of the office.

In suit under our statute by an elector, to contest an election, he becomes a party, and is responsible for costs if he fail. The Court has no discretion to dismiss or entertain the case, as it deems the public interest requires. Nor has the State's Attorney such discretion. The case is prosecuted like any other action instituted by a private citizen, subject only to the provisions of the statute.

APPEAL from the County Court of Siskiyou.

This was a proceeding under the statute providing for contesting elections. Defendant appeals.

*Geo. Cadwalader,* for Appellant.

The default of the defendant did not waive the necessity of proof. The people of the State are interested in the result of such controversies.

*Hoge & Wilson and McCann & Ganahl,* of Counsel.

*Rosborough & Berry,* for Respondent.

This is a civil cause, and the default of the defendant admits the facts alleged against him. (Wood's Dig. art. 2163, sec. 63.)

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. concurring.

At the general election held in September, 1859, the defendant was returned elected to the office of Sheriff of Siskiyou county, and the

present proceeding was taken to contest his right to the office.  A motion to dismiss the proceeding was overruled, and the defendant declining to answer the statement filed by the contestant, the Court, without proof by either party, rendered judgment annulling the election of the defendant and awarding costs against him.   In this respect the ruling of the Court was clearly erroneous.   The public is interested in a contest of this character; it is not a matter solely between the parties to the record, and the popular will is not to be set aside upon a mere failure of a party to respond to charges alleged against his right by an individual elector.   It is not sufficient that ample causes of contest be set forth in the statement filed by a contestant; it is requisite that their truth should be established by clear proof before an election can be annulled.   The statute in terms provides that the Court shall pronounce judgment, after hearing "the proofs and allegations of the parties," which of course means such as may be made by either or both.   If no proof be given on either side, the proceedings should be dismissed.   It follows that the judgment must be reversed and the cause remanded; and it is so ordered.

On the return of the *remittitur,* the case was tried on its merits and judgment rendered declaring defendant ineligible to the office of Sheriff. He appeals.

For facts, see opinion.

*George Cadwalader,* for Appellant.

1. The intention of the twenty-first section of art. 4 of the Constitution of this State is to exclude the possibility of the incumbent of a Federal office, exercising a State office, at the same time—so as not to confound the limits of Federal and State sovereignty.   The mere election of Grow did not make him a State officer; until he qualified, he was not to receive anything from the State, or incur to her any responsibility.   He made no attempt to hold both offices.   A minor is eligible to an office who attains his majority before the arrival of the time of qualification.   (See generally, *Hammond* v. *Herrick,* Congressional Contests, 287; *Earl's case,* 314; *Munford's case,* 316; *State of Vermont* v. *Fisher,* 28 Vt. 714.)

2. The term "compensation," in the above section of the Constitution, does not mean what the officer receives without deducting the

Searcy *v.* Grow.

necessary and notorious expenses of every post office, any more than the same term when used in the Federal or State Constitution, with reference to the pay of Judges, means that they shall pay. the rent of court rooms, etc., out of their salary.

*Rosborough,* for Respondent.

No brief on file.

BALDWIN, J. delivered the opinion of the Court—COPE, J. and FIELD, C. J. concurring.

This case was before us at the last term, and was decided upon a point not now presented. The proceeding is a contest for the office of Sheriff of Siskiyou county. Grow, the appellant, was returned as elected to that office at the September election, 1859. The ground of contest is, that, at the time of the election, he was postmaster in the town of Yreka, and that the compensation of the office exceeded five hundred dollars per annum. The Court below found for the contestant, and Grow appeals.

The Constitution, in the twenty-first section of the fourth article, provides: "No person holding any lucrative office under the United States or any other power, shall be eligible to any civil office of profit under this State; *provided* that offices in the militia to which there is attached no annual salary, or local officers and postmasters whose compensation does not exceed five hundred dollars per annum, shall. not be deemed lucrative." The Act of the Legislature, prescribing the mode of contesting elections and the grounds of contest, makes the fact that the returned candidate was ineligible at the time of the election, one of those grounds. Grow was postmaster at the time of the election, but had resigned at the time of his qualification. It is in proof, and so found, that the income of the office of postmaster was some $1,400, but that the expenses of assistant, rent, etc., were some $1,000 per annum; so that the net sum received or enjoyed by Grow was less than five hundred dollars.

The counsel for the appellant contends that the true meaning of the Constitution, is that the person holding the Federal office described in the twenty-first section is forbidden to take a civil State office while so holding the other; but that he is capable of receiving votes cast for him, so as to give him a right to take the State office upon or after resigning

the Federal office.  But we think the plain meaning of the words quoted is the opposite of this construction.  The language is not that the Federal officer shall not *hold* a State office while he is such Federal officer, but that he shall not, while in such Federal office, be *eligible* to the State office.  We understand the word eligible to mean capable of being chosen—the subject of selection or choice.  The people in this case were clothed with this power of choice; their selection of the candidate gave him all the claim to the office which he has; his title to the office comes from *their* designation of him as Sheriff.  But they could not designate or choose a man not eligible, *i. e.*, not capable of being selected.  They might select any man they chose, subject only to this exception, that the man they selected was capable of taking what they had the power to give.

We do not see how the fact that he became capable of taking the office, after they had exhausted their power, can avail the appellant. If he was not eligible at the time the votes were cast for him, the election failed.  We do not see how it can be argued that, by the act of the candidate, the votes which, when cast, were ineffectual because not given for a qualified candidate, became effectual to elect him to office.

Can it be contended, that if Grow had not been a citizen of the county or of the State, at the time of the election, or had been an alien at that time, that the bare fact that he did so become a citizen at the time he qualified would entitle him to the office?  Or suppose a man, when elected, under sentence and conviction for crime—if such a case can be supposed—would a pardon before qualification give him a right to hold the office?

When the words of the Constitution are plain, we cannot go into curious speculation of the policy they were meant to declare.  It may, however, have been a part of the policy of the provision quoted to prevent the employment of Federal patronage in a State election.

The authorities cited by the appellant are for the most part inapplicable to the case at bar, and go upon the construction of different language than that in our Constitution.

Our attention has been particularly called to the case of the *State* v. *Fisher*, (28 Vermont, 714).  That case was information by the State's Attorney for the county of Orange, suggesting that the respondent was postmaster in the town of Orange, and was also exercising the office of Justice of the Peace, and praying a *quo warranto*.  The Constitution of Vermont is similar to our own in this respect, except there is no

Searcy *v.* Grow.

limitation of value to the Federal office. It seems that the Supreme Court of that State have original jurisdiction in cases of *quo warranto.* The Court held, first, that the petition must be dismissed for a technical reason, and then proceed:

" But as this is a defect readily supplied, we ought to say, perhaps, that we should still decline to interfere.

" We regard this proceeding like writs of *mandamus* and other pre-rogative writs, as resting altogether in discretion, and there are many reasons why we should not interfere :

" 1. The office is of very small importance, there being nearly two thousand in the State.

" 2. It is but for one year, and in Massachusetts, and some other States, perhaps, the Supreme Court refuses to interfere by writ of *quo warranto* upon that ground alone; the time being scarcely sufficient to determine the case before the office will expire, and in the present case the term is already considerably abridged.

" 3. There is no other person who complains of being deprived of the office which is exercised by the respondent."

If this be the law in Vermont, as we presume it is, we are very clear that we have not in the matter here the discretionary power which that respectable Court exercised in the case just cited. This is not an appeal to us as a Court of original jurisdiction, vested with prerogative powers to be exercised at discretion—by which we understand a legal discretion to entertain the question or not, as a sense of the public interest may suggest. This is a proceeding given by statute to any citizen who desires to contest an election, by the institution of which proceeding he becomes a party, and is responsible for costs if he fails. The Court has no discretion to dismiss the case, nor has the State's Attorney; but the case is prosecuted like any other action instituted by a private citizen, subject only to the provisions of the statute. The Court, in 28th Vermont, proceeded upon the ground that, having orig-inal jurisdiction over this subject of *quo warranto,* the exercise of the power was to be made only in cases where the public convenience and welfare required; that this writ was the State's right, and was only to be issued for the State's benefit. But we have no authority to issue any writ at all, and no control over the litigation except to decide the question involved in the appeal. This statement shows how irrelevant the case cited is to anything before us.

The other cases need not be reviewed. Some of them, as the Con-

Searcy *v.* Grow.

gressional election cases, are of very equivocal authority, even if analogous in the facts, and the rest are in number and weight insufficient to overturn the clear meaning of the language of the Constitution.

2. The next point is, that under the facts, the compensation of the office does not exceed five hundred dollars, within the true meaning of the terms of the twenty-first section.    The counsel construes this word "*compensation*" to be the clear income of the office resulting after the payment of all the necessary expenses.    If the expenses had taken all the income, the office, in this sense of the word, would have been without *any* compensation.    The pay of a postmaster consists of certain commissions, etc., allowed him by the Government; he keeps the office, furnishes rooms, an assistant, etc., at his own expense.    The money is due to him directly, and it is his property to dispose of as he pleases. For all this service, the Government pays him this allowance; and the sum so received, in common understanding, and perhaps in strict grammatical accuracy, may be called his compensation.    To entitle it to this name, it need not be a full and just recompense for his services, for we say without inaccuracy, "a given compensation is inadequate."    The accepted meaning of the term is, that return which is given for something else; in other words, a consideration; and in this sense the word is used in the Constitution.    The Constitution, by the qualification, meant to define, not the profit made by the office-holder, but the income of the office.    It never meant to make the exclusion of the right to hold the State office to depend upon the economy or want of economy, or the good or bad management with which the Federal office was conducted, or the casual or fluctuating conditions which determine the annual expenses.    The argument of the learned Judge below seems to us conclusive upon this point.    Nor is there any force in the suggestion that the office might not be worth ten dollars in some years.    We must judge of the value of the office by the past receipts and the nature of the business.    The same argument would apply to every office, however large the income from it, if that income was derived from fees, and these dependent upon the business done.

One or two technical points are taken by the appellant, but we think they are without merit.

This may be a hard case on the appellant—indeed, it seems to be so—but we cannot set aside the directions of the Constitution to relieve him.

Judgment affirmed.