## SATTERLEE v. SAN FRANCISCO.

UNDER the charter of San Francisco in 1853, no ordinance could have any validity, unless it received the votes of a majority of all the members elected to the Board of Aldermen. The board consisted of eight members. One of the members elected that year was an alien, and ineligible, yet he was sworn in, and entered upon the discharge of his duties: *held*, that there were eight members elected, and that it required five votes to pass an ordinance.

Satterlee *v.* San Francisco.

The validity of an election does not depend upon the eligibility of the candidates voted for, but upon its being held and conducted at the proper time and place, in the manner, and by the proper persons and officers as required by law.

Although the person elected may not possess the necessary qualifications to entitle him to take or hold the office, yet if he enter upon the discharge of its duties, he becomes an officer *de facto,* and his right to hold the office can only be contested by direct proceedings for that purpose. The question of his eligibility or ineligibility can never be inquired into in a collateral action, and can only be raised in the Courts by a direct proceeding to contest the election or by a writ of *quo warranto.*

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

At the sale of the city slip property in 1853, the plaintiff became the purchaser of two lots for the sum of $22,000, and paid $5,000 of the purchase money down, and in 1854 paid the further sum of $2,490 on the purchase money. This action was brought to recover back the sums thus paid, and legal interest thereon, by reason of the failure of title, owing to the invalidity of the ordinance under which the sale was made.

Plaintiff had judgment in the Court below, and defendant appealed.

*Shafter, Heydenfeldt & Goold,* for Appellants.

Seven members only were elected to the Board of Assistant Aldermen in the fall of 1853. It appears in the record, that Hyde (the eighth man) was a candidate ; that he was certified to the Board of Assistants as having been elected ; that he took the necessary oaths, and was installed in office. But it also appears that he was a native of Ireland, born in the allegiance of the British crown ; that he came to this country at an early day, and that he was not naturalized until long after Ordinance 481 was finally passed upon by the board, on the fifth of December, 1853.

In order to ascertain whether, in view of the foregoing facts, Hyde was elected a member of the board in any known legal sense, a test must be found to which the question can be subjected. Two only can be suggested : the test *de facto* and the test *de jure.* Which of the twain should be adopted here ? The test *de facto* should not be used for the following reasons :

1. That test is applied only to public officers, corporations, and governments—or, more largely stated, to persons natural or artificial—never to events. The books speak of "valid elections," "legal elections," and "colorable elections," but nowhere of "elections *de facto*."

2. The *de facto* rule, when applied to public officers, is not used by the law from choice, but from public necessity, or for the purpose of preserving the rights of third persons; and when used for or against corporations, it is on the ground of "good faith," and then it is worked by way of estoppel.

As a further reason why the election of Hyde should not be tested by the rule *de facto*, we suggest that that rule is adopted with a view to conserve an act done: as in the case of a judgment rendered, or any other official act done under color of authority, or in case of a contract made by a private company, holding itself out to the world as a corporation, etc.

The question of whether Hyde was ever elected a member of the Board of Assistants, is to be determined by the rule *de jure*. Under that rule, as he obviously lacked capacity to hold the office under the limitations of the charter, he was never elected at all.

The question is not, whether, at some time prior to his resignation, Hyde did not become an officer *de facto*; nor is it whether some ordinance which he may have voted for, and which for its validity may have depended upon his vote, shall be held good on the ground that he was an officer *de facto*, or be held bad on the ground that he was not something better than an officer *de facto*; but it is, was his election a *de facto* election; or, on the other hand, was it a mere nullity? An utterly void election is legally possible. (*Rex* v. *Mayor of Birmingham*, 7 A. & E. 254; *Dickey* v. *Hurlburt*, 5 Cal. 343; *People* v. *Porter*, 6 Id. 28; *People* v. *Johnson*, Id. 673; *People* v. *Weller*, 11 Id. 49; *People* v. *Martin*, 12 Id. 409; *People* v. *Westbrook*, 14 Id. 180.)

*Nathaniel Bennett*, for Respondent.

We maintain that Hyde was a "member elected" of the Board of Assistant Aldermen. We have seen that an election was duly held; that such election was not only an election *de facto*, but *de*

*jure.* It was conducted with all the formalities essential to make it an election *de jure.* The labored distinction of the counsel for appellants between an election *de facto* and an election *de jure*, falls to the ground. It appears to us, that the distinction between the terms *de facto* and *de jure*, as applicable to an election, is misapprehended. An election *de jure* is one which is held after all the necessary preliminary steps have been taken, such as proper notice, etc., and where it is held by the proper officers, and at the proper place and time. But there may be an election held, where all the circumstances required by law do not concur, and such would be an election *de facto.* The counsel confound the distinction between an election *de facto*, and an officer *de facto.* Now, Hyde was elected at an election held *de jure ;* but, if he was destitute of the proper qualifications for a candidate, he became, after the election, an officer *de facto ;* and being such officer *de facto*, all the results necessarily flow from his holding the office, whether they be of a positive or negative character—whether they be acts of commission or of omission—whether the enactment of ordinances, or the failure of ordinances proposed. If he was a "member elected" for any purpose, he was a "member elected" for all purposes, and as affecting all acts, as well negative as positive.

But what matters it whether Hyde was an "elected member" of the board or not? The result is the same. If he was not elected, his opponent was; and, whether the one or the other, eight Assistant Aldermen were elected; for no objection is raised that the candidate opposing Hyde had not the proper qualifications. That an election was held in September, 1853, is not denied. It is expressly admitted. At such election, one of the two candidates for the office of Assistant Alderman must be taken to have been elected—either Hyde or his opponent, Capt. H. S. Brown; and if either, the full number of eight Assistant Aldermen required by the charter, must be deemed to have been elected.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

This is one of numerous cases arising out of the attempted sale in 1853, by the municipal authorities of the City of San Francisco,

of property known as the City Slips; and depends entirely upon the validity of City Ordinance No. 481, which purported to authorize such sale.    The charter of the City of San Francisco then in force, declared that no ordinance should be passed " unless by a majority of all the members elected to such Board."    The Board by law consisted of eight members; but at the time this ordinance was passed, one of the members, Hyde, had resigned, leaving only seven in office, of whom four voted for the ordinance and three against it. It is contended that the charter required not less than five affirmative votes to pass an ordinance, and that as this ordinance received only four votes in its favor, it was not therefore legally passed; that it was no ordinance, and no right could be acquired under it.    This construction of the charter has been sustained by repeated decisions of this Court.    (San Francisco v. Hazen, 5 Cal. 169; Holland v. San Francisco, 7 Id. 361; McCracken v. San Francisco, 16 Id. 594; Grogan v. San Francisco, 18 Id. 590; Pimental v. San Francisco, 21 Id. 351.)    The appellant contends, however, that some important questions were overlooked or not considered by the Court in those cases, and therefore asks that the whole subject be reviewed, and a new construction given to the clause of the charter in question; or that it be held inapplicable to the ordinance in question.    Where a question involving pecuniary interests of such great value as the present one, has been fully adjudicated for a long period of time, and is sustained by numerous decisions; and where rights and interests of great value have been acquired under it, it ought not to be disturbed, except for the strongest reasons and under the most urgent necessity.    It is with this general view of the subject that we propose to examine the questions raised by the appellants.

It is urged that in those cases it appeared to be an admitted fact that Hyde had been regularly elected a member of the Board, and that a few days before the passage of Ordinance 481, his place became vacant by voluntary resignation.    It is claimed that the record in this case shows that he was not thus elected, because he was an alien, and not therefore eligible to the office; that the Board for that year consisted of seven members only, instead of eight, and therefore four constituted a " majority of all the members elected."

It is insisted that this is a new question, presented to the Court for the first time in this case; and that the decision in the cases above referred to are not decisive, even though the language of the opinions is broad enough to cover this question. In the *Grogan case,* it was stated that the clause of the charter in question was one " which this Court has held, required for the passage of an ordinance a majority of the votes of the entire number which the charter provided should be elected." And the opinions in the *Hazen* and *Mc-Cracken* cases are to the same effect. The proper construction of that clause of the charter was one of the matters to be adjudicated by the Court in those cases, and we cannot with propriety regard those decisions as mere *obiter dicta.*

It is not disputed that an election was duly held in the City of San Francisco in September, 1853; that Hyde was one of the candidates at that election; that he received a majority of all the votes cast for Assistant Alderman of the First Ward at such election; that he received a proper certificate of his election; that he took the required oath of office, and was duly installed into the office; that he was declared duly elected by the proper officers, and took his seat with the other members of the board, and acted as such from the time of his election to the date of his resignation, which was a few days before the passage of the ordinance in question. There is no question that the other seven members of the board were duly elected, and that they were eligible to the office. These facts show that there were eight " members *elected,*" within the intent and meaning of the charter; and we hold that the number of " members elected " was not reduced from eight to seven by the mere fact that Hyde was not eligible to the office by reason of his alienage. The charter provides that each board should "judge of the qualifications of election of its own members." The board having declared him duly elected, his eligibility was so far determined by the body in which the power was vested by law, as that he became a member of the board, with the right to exercise the same powers and perform the same duties as other members, at least until his right to hold and retain the office had been duly adjudicated in a proper judicial proceeding instituted for that purpose. While he held the office he was an officer *de facto,* and his acts as such officer were entitled to credit accordingly.

It is urged that though there was an election *de facto* in the First Ward at that time, yet there was no election *de jure*, because the successful candidate was not eligible.    We cannot subscribe to that view.    The validity of an election does not depend upon the eligibility of the candidates, for if it did, it might be contended that an election would be invalid because an unsuccessful candidate was disqualified from holding the office voted for.    The validity of an election depends upon its being held and conducted at the proper time and place, in the manner and by the proper persons and officers, as required by law.    The election in this case was thus held, and it was therefore valid.    The person receiving a majority of the votes cast at a valid election may not possess the necessary qualifications to entitle him to take or hold the office to which he is elected ; but that is a question to be adjudicated by the proper tribunals.

In this case, the board to which Hyde was elected had the power to determine this question, and they are to be considered as having decided it when they declared him duly elected ; but their action was not final.    His right to take and hold the office might have been contested under the proceedings authorized by the election law, or by a writ of *quo warranto*.    But the validity of the election, or his right to take and hold the office, cannot be inquired into in a collateral action or proceeding like the present.    (*Turner* v. *Maloney*, 13 Cal. 621 ; *People* v. *Olds*, 3 Id. 174, 175 ; *People* v. *Collins*, 7 J. R. 549 ; *Wilcox* v. *Smith*, 5 Wend. 231 ; *Hall* v. *Luther*, 13 Id. 491 ; *Shore* v. *Scott River Water Company*, 17 Cal. 626.)

The case of *Searcy* v. *Grow* (15 Cal. 121), referred to by the appellant, does not conflict with this principle, as that was a proceeding under the election law contesting the election of the defendant, and was therefore a proceeding directly against the person claiming the office, to prevent him from taking or holding it.    In the case of *Turner* v. *Maloney* (13 Cal. 62), it was directly held, that the question of eligibility of an officer could not be tried in a collateral proceeding.    In that case it was an application for a *mandamus* to compel the Controller of State to draw his warrant for the plaintiff's salary as District Judge.    It was opposed, on the

ground that the plaintiff was ineligible because he held the office of Inspector of Customs, a lucrative office under the United States— a similar question to that raised in the case of *Searcy* v. *Grow*.

But if we are mistaken in our views of this question, we would not feel justified in overturning the previous decisions of this Court construing this clause of the charter. To do so, would clearly violate the rule of *stare decisis*. Under these circumstances it is not necessary to inquire whether that construction is correct or not.

The judgment is affirmed.