30  185
d142 589

## OTTO WALTHER v. LEOPOLD RABOLT.

AN ALIEN CANNOT HOLD OFFICE.—An alien is not eligible to an office in this State.
EVIDENCE OF ALIENAGE. — Evidence that a person was in Germany, living with German parents, when six years old, and that he remained in Germany until he was eighteen years old, when he came to the United States, and that he could not then speak the English language, is sufficient to justify the Court in finding that he was an alien born.

APPEAL from the County Court, Eleventh Judicial District, Amador County.

At the general election held on the 6th day of September, 1865, the defendant was elected Treasurer of the County of Amador for the term of two years, to commence on the first

24

Monday of March, 1866. He afterwards took and subscribed the oath of office, and gave the bond required by law.

The plaintiff, who was a qualified elector, on the 9th day of December, 1865, filed in the office of the County Clerk of said county a statement, contesting the right of the defendant to hold the office, on the ground that he was an alien. The County Judge appointed a special term of the County Court to be held on the 21st day of December, 1865, to hear and determine the contest. The defendant answered, denying that he was an alien. The plaintiff, to prove the alienage of defendant, introduced as a witness George Axtman, who testified as follows:

"I reside in Amador County; am acquainted with defendant, Rabolt. I first became acquainted with him in the Duchy of Baden, in Germany, Europe; he lived under the Duke of Baden; we used to go to school together when we were boys. His parents were Germans; defendant was about six years old when I first knew him; it was at Sherlburg, in Baden; he lived there until he was seventeen or eighteen years old; he then came with me to the United States in 1851; he then spoke the German language—did not speak any English; his father died when defendant was six or eight years old; he died at Sherlburg, in Baden; we first came to New York, and staid there two days; then went to Philadelphia; I think defendant stopped there a year and a half; I think defendant came to California first; I saw him first in this State in 1856."

Defendant, by his attorney, objected to the testimony; the Court overruled the objection, and defendant excepted.

The plaintiff then rested.

The Court gave judgment annulling and setting aside the election of defendant.

The defendant appealed.

*H. H. Hartley,* for Appellant, argued that the evidence did not warrant the finding that the defendant was an alien, and

cited Perry & Knapp's Contested Election Cases, 147, and *The State* v. *Beackmo*, 6 Blackford, 488. He also contended, that by the common law an alien could not make the laws of a country to which he had emigrated, but that this was the only disability imposed on him at common law, citing 1 Bacon's Abridgment, 199–201, and that, as by our Constitution the Governor, members of the Legislature, and electors were required to be citizens of the United States, and these were persons who were concerned in making laws, and no such qualification was imposed on those holding other offices, the inference was that it was the intention to allow aliens to hold other offices not having legislative duties attached to them.

*Badgley & Tilden*, for Respondent, as to the evidence of alienage, argued that defendant having emigrated from a foreign country, the presumption was that he was born there, and that naturalization being a matter of record could never be presumed, and cited *Jackson* v. *Wright*, 4 John. 76.

As to alienage disqualifying a person from holding office, they also argued that this disqualification was not the result of any constitutional or statutory provision, as the only officers in regard to whom there was an *express* requirement of citizenship by the Constitution were Governor, Lieutenant Governor, and members of the Legislature, and by the law, Judges of the Supreme and District Courts ; but that such disqualification was the natural offspring of the common political law of England and of this country, by which all aliens were prohibited from the exercise of the right of suffrage and the holding of public office, unless such right was expressly given them by the Constitution or laws of the State in which they resided ; and cited 1 Kent Com. 473 ; 2 Ib. 64 ; Bouvier's Law Dic. title Alien ; *Dorst* v. *Beecker*, 6 John. 332 ; and 7 Mass. 523.

By the Court, SAWYER, J.:

The evidence is sufficient to justify the finding that the defendant is an alien. (*Jackson* v. *Wright*, 4 John. 79.)

The only other question is, whether an alien is eligible to the office of County Treasurer. It may be said, generally, that the right to vote and of eligibility to office, are political, and in some sense correlative rights. At common law an alien had no recognized political rights. He was permitted to enjoy certain civil rights, but even these were hedged in by many restrictions and limitations. The English common and statutory law was very chary of extending political privileges to those who were alien born; so much so, that when an alien was naturalized by Act of Parliament, a proviso was appended excluding him from holding office—a consequence which would otherwise follow as a matter of course from the naturalization. Indeed, so important was this exclusion considered, that there was a statute expressly prohibiting the introduction into Parliament of any bill for the naturalization of an alien unless it contained such a proviso. When it was considered advisable to grant this great boon—the capacity to hold office—as a matter of especial favor to some distinguished foreigner about to be naturalized, it was accomplished in this wise: An Act was first passed, repealing, as to the party designed to be thus honored, the clause of the statute inhibiting the introduction of a proper bill for the purpose; and an Act was then passed without exceptions. Thus, then, it appears that neither a denizen at common law, nor a naturalized citizen under the general statutory law of England can hold office. A fortiori, an alien cannot. (*Rex* v. *De Mierre*, 7 Burr. 2,788; 1 Bac. Abgt., Let. B., p. 200 and note; 1 Black. Com. 374.) And such we understand to be the common law in force in the other States in respect to aliens, where not in any particular modified by constitutional or statutory provisions. And such we also understand the law to be with reference to political rights in all civilized countries. (Cushing's Law. Legis. Ass., Secs. 24, 32, 56; Vattel's Law of N. 1, Chap. 19, Sec. 214; 2

Kent's Com. 84; Bouv. Law Dic., title "Alien;" *Dorst* v. *Beecker*, 6 John. 332; *Searcy* v. *Grow*, 15 Cal. 117.) We know of no constitutional or statutory modification of the common law in this State as to the political rights of aliens. But the question is so well discussed under the second head in respondent's brief that, without repeating the argument, upon the reasons there stated and authorities cited, in addition to what has already been said, we hold the defendant to be ineligible.

It follows that the judgment must be affirmed, and it is so ordered.

SANDERSON, J., concurring:

"All political power is inherent in the people," (Art. I, Sec. 2, of the Constitution,) and those who are not of the people can have no share in it. The people are such as are born upon the soil, by whom and for whom in the first place the Government was ordained, and such persons of foreign birth as may elect to assume the obligations of a citizen by complying with the laws of naturalization as enacted by Congress. If they desire to secure political rights they must cease to be aliens and become citizens in the mode there prescribed. Until then they can neither vote nor hold office; they can neither choose nor be chosen, for that is to exercise political power, and they are not of the people, who alone may exercise it. In the nature of things this must be so, and cannot be otherwise, except by force of some positive law. None such exists. By Section 17 of Article I of the Constitution, foreigners who were then or might thereafter become *bona fide* residents of the State, are vested with the civil rights of native born citizens as to the possession, enjoyment and inheritance of property; but neither there nor elsewhere are they clothed with a share of the political power which is inherent in the people, or allowed upon any terms other than those of allegiance to participate in the management of public affairs.

I concur in the judgment.