# GIOVANNI HERZO v. THE CITY OF SAN FRANCISCO.

ACTION TO RECOVER BACK PURCHASE MONEY.—If a purchaser of property from a municipal corporation acquires neither title nor possession from the corporation by the attempted sale, but the sale is void, he is not required to convey or transfer either the property or the possession to the corporation, before the commencement of an action to recover back the purchase money.

POWER OF MUNICIPAL CORPORATION.—A municipal corporation is the creature of the statute, invested with such power only as is conferred by the statute.

IDEM.—A municipal corporation has no power to receive money, unless authorized to do so by its charter.

LIABILITY OF MUNICIPAL CORPORATION.—If the officers of a municipal corporation receive into its treasury money obtained from a sale of the property of the city, which sale is void for want of power in the corporation to make it, the purchaser cannot recover the money back from the city.

IDEM.—In such case, if the city had no power to make the sale she has no power

to ·receive the money, and the act of its officers in placing the money in the ·treasury is not the act of the city, but the unauthorized act of its agents, who alone are liable for the money.

IDEM.—If, in such case, the city, after the money is in its treasury, appropriates it to municipal purposes, the appropriation makes it liable, provided it is made by valid ordinances ; but if an appropriation is made by virtue of ordinances which are void, because not passed in accordance with the charter, the city ·is not liable for the money, even if it is applied by the officers to pay city debts and expenses.

IDEM.—If the ordinance under which the Treasurer of a municipal corporation pays out money is void, the payment by the Treasurer is not an appropriation of the money by the city.

ORDINANCE OF MUNICIPAL CORPORATION.—A clause in the charter of a municipal corporation having two Boards of Aldermen, which requires an ordinance that has passed one Board to be published in a paper before it is sent to the other, ·and that no ordinance which has passed one Board shall be acted on by the other on the same day, except by unanimous consent, is not merely directory, and an ordinance passed in violation of its provisions is void.

MUNICIPAL CORPORATIONS.—There is a clear distinction between most municipal corporations as they exist in Great Britain, and those of a more recent date in the United States. The former depend upon prescription for their existence and authority, while the latter depend upon their respective charters.

CASES AFFIRMED.—McCracken v. San Francisco, 16 Cal. 621, Grogan v. San Francisco, 18 Cal. 610, and Pimental v. San Francisco, 21 Cal. 351, affirmed so far as the facts correspond with those found in this case.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 4th day of November, 1852, the Common Council of San Francisco passed an ordinance declaring that the space of land and water lying between Clay and Sacramento streets, and Davis street and the deep waters of the bay, was set apart and dedicated to public use as a free public dock for ships, provided that the ordinance should not prevent the Common Council from altering or annulling the grant.

On the 5th day of December, 1853, the Common Council passed an ordinance providing for the sale of said property; but this ordinance was void because the Board of Assistant Aldermen consisted of eight members, one of whom had resigned, and the ordinance only received the votes of four of the seven remaining members.

Under this ordinance the property was sold, and the plaintiff, at the sale, became the purchaser of two lots, at eight

thousand five hundred dollars each, and paid the money to the city officers, by whom it was placed in the treasury. The Common Council afterwards appropriated the money by Ordinance 505, and Joint Resolutions 383 and 405, mentioned in the opinion of the Court.

The plaintiff received a conveyance from the city, and entered into possession of the lots, which possession he had when this suit was commenced.

The Court below gave judgment for the defendant, and the plaintiff appealed.

The other facts are found in *McCracken* v. *San Francisco*, 16 Cal. 621, *Grogan* v. *San Francisco*, 18 Cal. 610, and in the opinion of the Court.

*Joseph G. Baldwin*, and *John B. Felton*, for Appellant.

The deed was void, not voidable. (*McCracken* v. *San Francisco*, 16 Cal. 621, 628; *Grogan* v. *San Francisco*, 18 Cal. 610; *Wolga* v. *San Francisco*, not reported; *Pimental* v. *San Francisco*, 21 Cal. 351; *Reed* v. *San Francisco*, not reported; *Satterlee* v. *San Francisco*, Oct. Term, 1863; *Macy* v. *San Francisco*, Oct. Term, 1863.)

The city has not made a contract of sale or lease, either by ordinance, by public auction, or by direct vote of the Council, but refused to authorize the sale, (16 Cal. 621, 628; 18 Cal. 614,) and plaintiff was a trespasser on the land.

It is very safe to say that no case can be found in the books in which it is asserted that a party paying money under a void authority—the person receiving it affirming that he had a valid authority—is held to be affected by the fact that the party paying went into possession of the property, real or personal, and retained that possession to the time of suit; and we feel fully warranted in defying counsel to produce any such case, while we produce many cases directly holding the contrary doctrine. (See, also, *Lowry et al.* v. *McDonald*, 1 Smedes & Mar. Ch. 620; *Ives et al.* v. *Pierson*, Freeman Ch., Miss., 220; *Crisman* v. *Beasley*, 1 Smedes & Mar. Ch. 561.)

We admit fully that whenever a charter requires or empowers a corporation to make a contract in a prescribed form, or upon fixed terms and conditions, the contract is not binding upon the corporation unless so made; but we contend that when general powers are given to a corporation, and no requirements of mode or form apply to the exercise of these powers, the corporation may act as an individual, and that the same implications and intendments attach to its acts as to the transactions of private persons; and that there is no difference in this respect between the acts of public and private corporations. If anything is settled in law, these principles are settled. (*Bank of Columbia* v. *Patterson*, 7 Cranch, 299; *Fleckner* v. *Bank of the United States*, 8 Wheat. 338; *Bank of the United States* v. *Dandridge*, 12 Wheat. 64; *Mott* v. *Hicks*, 1 Cowen, 513; *Chesnut Hill Co.* v. *Rutler*, 3 Serg. & Rawle, 16; *Fourth School District* v. *Wood*, 13 Mass. 184; *Union Bank* v. *Ridgely*, 1 Harr. & Gill, 324; *Kennedy* v. *Baltimore Ins. Co.*, 3 Harr. & Johns. 367; *Dunn* v. *St. Andrew's Church*, 14 Johns. 118; *Episcopal Ch. Society* v. *The Episcopal Church*, 1 Pick. 372; *Proprietors of Canal Bridge* v. *Gordon*, 1 Pick. 297; *Randall* v. *Van Vechten*, 19 Johns. 60; *Ross* v. *The City of Madison*, 1 Carter, Ind. 252; *Mayor of Ludlow* v. *Charlton*, 6 Mees. & Welsby, 824, and note by American editor; *Lester* v. *The Wabash Navigation Co.*, 14 Ill. 87; *Mayor of Lynn* v. *Turner*, Cowp. 86.) The doctrine is well settled that corporations, within the sphere of their general jurisdictions, are responsible, as well for the abuse as for the use of their powers. The application of these principles to the present case is easy. The city, as before intimated, has the general power of regulating and controlling her financial matters; she can collect her debts; she can hold a debtor bound to her to pay his debts; she can claim from him whatever she supposes or asserts he owes her. No forms are prescribed by the charter as the process by which this right is to be asserted, or this duty exacted. If A. owes the city a dollar, he may go and pay it, and the

18

payment to the proper receiving officer of the city discharges the debt; if the city claims from A. a debt, he may settle with her; the officers of the city are the proper persons to make this demand, and, the debtor assenting, to discharge him from all liability or claim. These officers *did* claim of these slip purchasers a sum of money as due from them to her; the purchasers on this representation did pay; this receipt by these officers was an official act. This money was received by them as money due the city; it was paid into the City Treasury as money claimed by the city as its property, and paid for and to the city. No ordinance or other official act was necessary in order to make this payment effectual. Then why was not the receipt of the money and its transfer into the City Treasury as the property of the city, and the asserted dominion and control of it by the city authorities, as the property of the city, an official act binding the city to the responsibilities of such receipt, as well as giving them the advantages of that receipt?

*Shafter & Heydenfeldt*, for Respondent.

*John W. Dwinelle*, and *Delos Lake*, also for Respondent.

In America the corporate power of a municipal corporation can be exercised only in the mode prescribed by its charter, and that mode is a part and measure of the power. If a municipal corporation, acting in the exercise of a power rightfully belonging to it, and in the mode prescribed by law, does an injury to any person, it is answerable for it by action, or may ratify its act. (*Peterson* v. *Mayor of New York*, 17 N. Y., 3 Smith, 449; *People* v. *Flagg*, 17 N. Y., 3 Smith, 584.) If a municipal corporation attempts to do an act which it is not authorized to do, or to do an act which it can legally do, but does not pursue the mode prescribed by law, the act is void, the corporation is not liable, and cannot be made liable by subsequent ratification, either actual or implied. (*Dunbar* v. *Alcalde of San Francisco*, 1 Cal. 355;

*Brady* v. *Mayor of New York*, 20 N. Y., 6 Smith, 312; *Holland* v. *San Francisco*, 7 Cal. 365; *Zottman* v. *San Francisco*, 20 Cal. 99.)

Is the City Treasurer the agent of the city? He is not elected by the corporation, but by the electors. Does he not fall within the condition thus described by the Court of Appeals of the State of New York, in *Lorillard* v. *The Town of Monroe*, 1 Kernan, 11 N. Y. 392: " I am of opinion, therefore, that the Assessors and Collectors of taxes are public officers, whose duties are prescribed by law, and that they are *not in any legal sense the agents or servants of the towns*, and that the towns, as corporations, are not responsible for any default or malfeasance in the performance of their duties." But if the City Treasurer be held to be an agent of the city, then how far forth is he such agent? The city charter (Laws of 1851, p. 363, Chap. LXXXIV, Art. 4, Sec. 4,) thus defines his duties : " It shall be the duty of the Treasurer to receive and pay out all moneys belonging to the city, and to keep an account of all receipts and expenditures under such regulations as may be prescribed by ordinance. The Treasurer shall make monthly to the Common Council a full statement of the receipts and expenditures of the preceding month, and publish the same in some city newspaper." He is agent then " to receive and pay out all moneys *belonging* to the city," and therefore not to receive and pay out moneys *not* belonging to the city ! ( *Vide* Baldwin, J., in *McMillan* v. *Vischer*, 14 Cal. 240.)

But, say the counsel opposed, " the money being there is recognized by corporate acts as the money of the city." How recognized by corporate act? No valid ordinance or joint resolution was passed, and the joint resolution asking for information respecting the sales and the moneys arising therefrom, and the report made thereon, not only do not amount to valid laws, but at most import only *knowledge* of the transaction, and that, too, not in the corporation, but only in the members of the Board, and such knowledge could not charge the corporation with any liability.

By the Court, RHODES, J.:

This is one of a large class of cases, usually called the " City Slip Cases," which are brought by the purchasers of certain lots from the city, to recover back the purchase money. Most of the material facts in this case are the same as those in *McCracken* v. *San Francisco*, 16 Cal. 621; *Grogan* v. *San Francisco*, 18 Cal. 610; *Pimental* v. *San Francisco*, 21 Cal. 351; and *Satterlee* v. *San Francisco*, 23 Cal. 314. Those cases received the most careful and laborious consideration of the Court, and deservedly so, for they involved important questions touching the powers, rights and liabilities of the corporation, and upon their decision depended property of great value. It was determined by the Court in those cases, that the ordinance of the city, No. 481, passed December 5th, 1853, authorizing the sale and conveyance of the lots, was a nullity; that the sales made and the deeds executed under the ordinance were void; that the sales were not ratified, and were incapable of being ratified by the passage of Ordinance No. 493, passed on the day of sale of the lots; that the sale and conveyance of the lots by the city to the purchaser, and his payment of the purchase money to the officers of the city, did not pass to him any right, title or interest in or to the lots; that the purchase money having been paid into the City Treasury, and the city having appropriated the same to municipal purposes, she became liable to the purchaser therefor, in an action for its recovery.

The course of reasoning by which those conclusions are reached, is quite fully stated in the very able and elaborate opinions in those cases, after the most searching and exhaustive argument of able counsel; and although some propositions are laid down and remarks made, that were not necessary to the decision of the points involved in those cases, yet we see no good reason for questioning the soundness of the conclusions drawn from the facts in those cases; and if we were not fully satisfied with them, the current of authority is

too strong and uniform to be resisted, and we adopt those conclusions so far as applicable to the case at bar.

This cause was submitted to this Court, together with several others of the same character, in some of which the city was the appellant, and in others the respondent; and the causes have been argued mainly on the points made by the city—the respondent in this case.

The first point is: "The conveyance of the lots of land, by the City of San Francisco to the appellant, was not void, but only voidable, and might ripen into a title. The appellant therefore had no cause of action until he made a reconveyance and surrender of that property to the city."

Regarding the conveyance as voidable, doubtless the proposition could be successfully maintained; but concurring as we do in the decisions on this point, in the cases mentioned, that the sale and conveyance were *void*, we are bound to hold that the conveyance could not ripen into a title, and did not nor could vest in the purchaser any right, title or interest in the lots; and that the purchaser having acquired from the city by virtue of the attempted sale neither the title nor the possession of the lots, he is not required to convey or transfer either to the city, prior to the commencement of an action to recover the purchase money.

The second point is: "If the city is liable in this action, it is only because she has appropriated the moneys of the plaintiff." There can be no doubt that this position is correct beyond a peradventure, for it is sustained both by reason and authority. The cases cited proceed distinctly on that theory, and in each of them, unless in the case of Satterlee, the appropriation of the money by the city was found as a fact. And the language of Mr. Chief Justice Field is very pointed and forcible. In *Pimental* v. *San Francisco* he says: "We do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated." In *McCracken* v. *San Francisco* his language is: "She [the city] cannot appropriate to her own use the property of others and screen herself from

responsibility upon the pretence of excessive indebtedness.
* * * The plaintiff, therefore, for his money has received
no consideration. The city has obtained it and used it, and
she is legally, as she is morally, bound to refund it to him."
The only authority it was ever pretended the city had to
effect the sale of the lots is found in Ordinance No. 481; and
she had no authority to receive anything on account of the
purchase money for the lots, unless a sale was made accord-
ing to law—in other words, her authority to receive the
money depended upon her capacity to make the sale, coupled
with a sale in fact—and it being found that the sale was void
for the want of authority to make it, it necessarily follows
that she was destitute of authority to receive the purchase
money. In this respect the city is in the attitude in which
she would have stood, had there been no attempt to pass an
ordinance to provide for the sale of the lots. The receipt of
the money by the Secretary of the Committee on Land
Claims was not the act of the city, for he had no power to
represent the city in that behalf. The proceedings of the
Land Committee and their Secretary in receiving the money
paid as the purchase money, as well as the acts of the Treas-
urer in receiving the money from the Secretary and placing
it in the treasury, were only the unauthorized acts of assumed
agents, and did not of themselves bind the city. The pur-
chaser could have recovered the money from the person who
received it, or from any one into whose hands he was able to
trace it; and it being shown that the money was paid to the
Treasurer, as the purchase money for the lots, a demand
upon and a refusal by him to return the money, would have
rendered him liable to an action for its recovery. Upon the
receipt of the money by the Treasurer, no liability attached
to the city, for it was placed in the treasury without her
direction or assent; and as she was not responsible for its
being in the treasury, she would not be accountable for it to
the purchaser until she had exercised dominion and control
over it, treating it as her own.

The plaintiff places the liability of the city upon the fact

that her agents, pretending that they had authority therefor, did sell the property and receive the price, when in truth they did not have authority to sell; that they paid the money into the treasury, and that since that time the authorities of the city have held, controlled and made claim to the moneys. A distinction is taken between the authority of the agents of the city to sell, and the authority of her agents to bind her by receiving and holding the purchase money. We have already said that the ordinance was the only source of their authority to make the sale, and that it failing for that purpose, it was equally defective as authority for any act or thing relating to or growing out of the sale.

But it is said that the authorities have a general jurisdiction over her claims to money; that her control of her money matters is as general as that of a citizen, with some unimportant exceptions, and that she has generally the power to receive money, and this she may do without any ordinance, the same as could a private person or a banking corporation. This is not true as a general proposition. While there is conceded to the city the power to receive money, the exception is broader than the rule. A municipal corporation is the creature of the statute, invested with such power and capacity only as is conferred by the statute, or passes by necessary implication from the statutory grant. All powers outside of those limits are as much beyond her reach as if she had never been created. Her artificial existence is absolutely bounded and circumscribed by those limits. She has not all the powers of a natural person except as restricted by the statute, but she possesses none except such as are imparted to her by the charter of her existence. She may receive a conveyance of real estate, in trust, if so authorized by the charter, but without such authority the title would not pass to her. And so in relation to the receiving of money. The statutes authorize the corporation to levy and assess taxes, licenses, etc.; and she has power to receive money paid for those purposes, but she cannot receive money paid as duties upon imports, because of the utter want of

capacity.' The Mayor and the Common Council and every officer of the municipality may have assisted in the receipt of the duties and in placing the money in the vaults of the City Treasury, and still it would be as void of effect as against the city as if she had never been organized under the charter.

But it is insisted that if the corporation can act upon the general subject to which the particular act belongs, this is enough; and although the particular act is forbidden, yet when done by her agents, she is bound, because of her general jurisdiction over the subject. The proposition stated more narrowly, so as to be applicable to the case, is: that as the city has the general power to receive money, the receipt by her agents in her name, of money paid for *any* purpose, will bind her. But this proposition to be true must be more limited in its terms. The city has neither the general power to sell lands, nor to receive money. She must have the capacity then and there to sell the land, or to receive the money for the purpose for which it is offered, or the acts of her agents will not bind her. This must be so, otherwise the restrictions and limitations imposed upon her by the charter, and which constitute an essential part of her artificial being, are idle and meaningless. The City Treasurer, conceiving that it would be advantageous to the city to have the treasury replenished, might go through the form of selling the City Hall to one who was willing to loan to the city his money, at the legal rate of interest, and upon the Treasurer's receipt of the money, the city would be liable for its repayment, with interest, because under the proposition as stated, she can act upon the general subject of the receipt of money.

It is generally true that the acts of the officials of the city falling within the general scope of the authority conferred upon them, will bind the city, and she will be responsible for all the legitimate consequences of those acts. It is on this principle that several of the cases cited by the plaintiff depend. For example: The city may levy a tax for municipal purposes, and it is the duty of the Assessor to make the assessment, and of the Collector to collect the taxes. The

Collector collects a tax from a person who is not liable to taxation for municipal purposes, and the city is answerable for the error, because the collection of municipal taxes falls within the general scope of the powers intrusted to the Collector. In the discharge of that duty, he is the agent of the city. Let the same officer assume the collection in the name of the city, of duties upon imports, and if it were enough to say, that he was authorized to collect money for the city, she would be liable for the money so collected, though he was wholly unauthorized by law. But she is not responsible for his acts in that respect, because they are clearly without the general scope of his authority, as the Collector of taxes imposed for municipal purposes.

It should not fail to be noted that there is a clear distinction between most municipal corporations, as they exist in Great Britain, and those of more recent date in the United States. The former depend upon prescription for their existence and capacity; while the latter find every element of their jurisdiction within their respective charters. Under the system of charters created by the Legislature, defining the corporate powers and the mode of procedure of the corporate authorities, it would be altogether out of the question for the corporation to be bound by acts such as were found in *De Grave* v. *The Corporation of Monmouth*, 19 Eng. Com. Law C. P. 109. In that case it was held that the examination of the weights and measures, which were the subject of the alleged contract, at a meeting of the corporation, and the subsequent use of some of them, were the exercise of acts of ownership over them, and that by so doing, the corporation recognized the contract for their purchase. In *Zottman* v. *San Francisco*, 20 Cal. 96, after a contract had been made for the erection of an iron fence around Portsmouth Square, according to certain plans and specifications, the President of the Board of Aldermen and a special committee from that body and certain other officers of the city, considering that it would be more advantageous to the city to have a stone base

to the fence, and to have certain other work done, in addition to that specified in the contract, ordered the contractors to perform the extra work and assured them that the city would pay them therefor. The members of the Common Council were aware of the order to the contractors and that the extra work was being done; and they not only did not disapprove, of the order, but in conversation expressed their approbation of it. It was held in the opinion delivered by Mr. Chief Justice Field, and which is remarkable for its logical clearness and the conclusiveness of its arguments, and has since been regarded by the profession as a leading case upon the propositions therein discussed, that the city was not liable for the extra work, and could not incur an obligation in that manner; and this on the ground that the rule applicable to the corporate authorities of all municipal bodies is, that " when the mode in which their power on any given subject can be exercised is prescribed by their charter, the mode must be followed. The mode in such cases constitutes the measure of the power." Cases involving questions as to the powers or mode of procedure of corporate bodies existing by prescription have but little force in deciding questions touching the alleged contracts or obligations of corporations created and regulated by statutory law.

The liability of the city cannot be deduced from the principle, that if her authorities, while discharging any of the functions pertaining to them by law, inflict an injury upon any one, she is held liable for the tort to the person injured. In the forcible language of the counsel for the plaintiff: " Responsibility everywhere accompanies privilege." The authority to open the street, or to levy and collect the tax, or to sell the tract of land—which constitutes the privilege— being given, the responsibility attaches for the acts of her agents in the performance of the duties committed to them in respect to those matters. But if her agents should enter upon some undertaking, in her name, without authority of law, she would be entirely unaffected by their acts, defaults.

or malfeasances, and this because she had no jurisdiction in the matter. They were not her agents in the business.

The city, in our opinion, not being responsible for the acts of her assumed agents up to and including the placing of the money in the treasury, and the money being then the money of the plaintiff, responsibility for the money does not attach to her till she has converted it to her own use. The unauthorized act of the Treasurer in paying it out to a third person, is not the act of the city, and it makes no difference in this respect whether he pays it to a creditor of the city, or to any other person. Suppose that he or the Secretary of the Land Committee, while the money was in his hands, acting upon the fact, of which all persons concerned had notice, that the sale was a nullity, had returned the money to the plaintiff, it could not be said that the act of payment was the act of the city. She could not rightfully do anything with the money, and to be responsible for it, she must have wrongfully converted it to her own use, and this she must have done by some corporate act, and the only act competent for that purpose was an appropriation, for that is the only manner in which she can dispose of money. The reports of the Secretary of the Land Committee and of the Treasurer, and the acceptance of the reports by the Common Council, neither changed the ownership, the custody or control of the money—it still remained in the hands of the Treasurer, and continued the property of the plaintiff.

It is not intended to controvert the position of the plaintiff that if the city received the money of the plaintiff, she is liable in an action for its recovery, for it is correct beyond a doubt; but the important question in the case must first be decided: did she receive the money? Nor is it intended to deny the doctrine of the Massachusetts cases cited by the plaintiff. We understand it to be a rule of law that the principal, whether a natural or an artificial person, is responsible for the acts of his agents, while they are acting within the scope of their employment, and as a necessary inference therefrom that when they are not so acting, he is not respon-

sible.   While acting within the scope of their employment, their acts are the acts of the principal.   To illustrate our views: Suppose the ordinance had been properly passed authorizing the Land Committee to sell the lots and receive the purchase money and pay it over to the Treasurer; and that they in making sale had by mistake received more than was due from a purchaser and paid it into the treasury.   As they were acting within the scope of their employment, their act would be the act of the city, and she would be responsible for the error.   But if no ordinance authorizing the sale ever passed, they have no authority, and are not employed as agents to sell or do anything in the premises, and their acts are their own, and not the acts of the city.   In the Massachusetts cases the officers of the several corporations were acting within the scope of their employment, and while so acting did the wrongful or erroneous acts complained of; and for those acts the corporations were held responsible.

The immunity of the city from responsibility for the unauthorized acts of her assumed agents, can work no greater hardship than would occur if the principal were a private corporation or person; for in each case those who deal with those professing to be agents, must see that they are such agents, and are invested with proper authority; and if they are not what they assume to be, they are responsible for their acts, and in the one case as well as the other, the person dealing with the pretended agent may follow the property improperly obtained from him.

The third point is : " The mode in which the city could render itself liable for the appropriation of the moneys being pointed out in the charter, not having been pursued, the city is not liable, for the mode is a part of the power."   This case differs from the preceding cases of the same class mainly in this particular.   In the cases of *McCracken*, *Grogan* and *Pimental* it was found that Ordinance No. 505, and Joint Resolutions No. 383 and No. 405, by which portions of the proceeds of the sale were appropriated, were legally passed by the legislative authority of the city; but in the present

case the facts in relation to their passage are set out; by which it appears that each of them were passed by both Boards of the Common Council on the same day, and no one of them was, after its passage by one Board, and before being sent to the other, published in any city newspaper with the ayes and nays, or acted upon by the other on the same day by unanimous consent. It was provided by the charter then in force, (Acts of 1851, p. 359, Art. 3, Sec. 4,) that every ordinance providing for the expenditure of public moneys (except for sums less than five hundred dollars,) " shall after its passage by either Board, and before being sent to the other, be published with the ayes and nays in some city newspaper, and no ordinance or resolution which shall have passed one Board shall be acted upon by the other on the same day, unless by unanimous consent." These requirements are not merely directory. The language of the section forbids such a construction. The requirements constitute conditions precedent, and without a compliance with them, the ordinance or resolution could not be legally passed. What we have said upon the second point, going to show that the unauthorized receipt of the money by the city officials did not amount to a receipt of the money by the city, is equally applicable to this point, to prove that the unauthorized payment of the money by the Treasurer, did not constitute an appropriation of the money by the city. The fact that the Treasurer may have paid portions or all of the money to creditors of the city, can make no difference in principle; for if he was not empowered and directed by the city authorities to make such payment—and the only mode in which she could act in conferring such authority, was through the medium of an ordinance appropriating the money—it would amount to no more than a voluntary payment made by any other person or by the same officer out of other funds, of which he may have procured the possession, either rightfully or wrongfully, but without the direction, aid or assent of the city government or any of its authorities.

It is unnecessary to pass upon the fourth point—that : " If

the city had not legally appropriated the money to municipal purpose, and the money was in its possession, then no right of action could accrue to the appellant without a previous demand and refusal "—for we are satisfied that the money was not in the possession of the city, and that to hold her responsible for it, she must have appropriated it to municipal purposes.

Judgment affirmed.

Mr. Justice SAWYER and Mr. Justice SHAFTER, being disqualified, did not sit in this case.