Smith v. Moore.

No. 10,971.

## SMITH v. MOORE.

OFFICE AND OFFICER.—*Judicial Office.*—*Constitutional Law.*—*Eligibility to Office.*—One holding a judicial office by election may, under the constitution of the State, R. S. 1881, section 176, be elected to an office, not judicial, the term of which will begin after his judicial term expires.

SAME.—One elected, with his consent, to a judicial office, but who does not accept the office, may, under the constitution, sec. 176, *supra*, be afterwards· elected to an office, not judicial, the term of which will run during the judicial term to which he was elected.

SAME.—*Definition.*—*Eligible.*—The word *eligible*, in section 16, art. 7, of the State Constitution, means *legally qualified.*

SAME.—*Cases Limited.*—Language found in the opinions in *Waldo* v. *Wallace*, 12 Ind. 569, *Gulick* v. *New,* 14 Ind. 93, *Howard* v. *Shoemaker*, 35 Ind. 111, must be limited to cases where the judicial term would run beyond the commencement of the term of the office, not judicial, to which the person is chosen. ELLIOTT, J., dissents.

From the Benton Circuit Court.

*D. Smith, R. P. Davidson* and *J. C. Davidson,* for appellant.

*T. L. Merrick, R. S. Travis, D. Fraiser* and *F. B. Everett,* for appellee.

ZOLLARS, J.—This case presents for decision a novel, and somewhat difficult question, involving, as it does, the proper construction and application of section 16, article 7, of the State Constitution.

Smith *v.* Moore.

Upon proper request, the trial court made a special finding of facts.

So far as they need be set out in this opinion they are substantially as follows:

At the general election in 1880, appellee was duly elected for his first term, treasurer of Benton county for the period of two years, from and after August 15th, 1881, was commissioned, duly qualified, entered upon the discharge of the duties of the office, and was so serving at the time of the general election in 1882.

At this last election, appellant, appellee, and one Finly were candidates for the office of treasurer of Benton county, for the term of two years, to commence on August 15th, 1883.

Appellant received a majority of all the votes cast, which was duly certified by the proper board of convassers.

At the April election in 1878, appellant was elected a justice of the peace in and for York township, in Benton county, for the term of four years, commencing on the 29th day of November, 1878, was duly commissioned, qualified, and was discharging the duties of the office at the time of the general election in 1882.

At the April election in said York township, in 1882, appellant, with his knowledge and consent, was voted for, for the office of justice of the peace for the term of four years, commencing on the 29th day of November, 1882, and received 127 votes, being the whole number of votes cast for that office.

Proper returns were made of this election. On the 18th day of April, the Governor issued a commission to appellant as such justice for a term of four years, from and after the 29th day of November, 1882.

This commission was forwarded to the clerk of the circuit court, where it still remains, appellant never having accepted the same, given bond, or in any way qualified or entered upon the duties of the office for the term so to commence on November 29th, 1882.

On the 27th day of November, 1882, appellant notified

the clerk in writing that he refused to accept or qualify for the second term as justice of the peace.

The court below found as conclusions of law upon these facts:

*First.* That on the 7th day of November, 1882, appellee was eligible to the office of treasurer of Benton county, for the term to commence on the 15th day of August, 1883.

*Second.* That appellant on November 7th, 1882, was not ineligible to election to said office of treasurer for the term to commence on the 15th day of August, 1883, by reason of his first election, commission and qualification as such justice of the peace from November 29th, 1878, to November 29th, 1882.

*Third.* That appellant was ineligible to election on November 7th, 1882, to the office of county treasurer, for the term commencing August 15th, 1883, by reason of his second election as such justice of the peace for the term of four years, from November 29th, 1882.

*Fourth.* That, by reason of appellant's ineligibility, appellee was elected and entitled to the office of treasurer of the said county, for the said term, commencing on the 15th day of August, 1883.

Judgment was rendered accordingly, declaring appellee, who was the contestor, entitled to the said office of treasurer. From this judgment appellant prosecutes this appeal.

The section of the Constitution above referred to is as follows:

" No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any office of trust or profit under the State, other than a judicial office."

Appellant contends that the ineligibility refers to the right and fitness to be inducted into, and discharge the duties of, an office other than a judicial one, and that the term elected has reference not merely to receiving a majority of votes, but also the acceptance of the office.

And that, hence, although appellant may have been in-

eligible on the day of election, 1882, by reason of his term of office as justice not having expired, yet, the ineligibility was removed by the expiration of that term on the 29th day of November, 1882, and he might rightfully and legally take and hold the office of treasurer, for the term to commence in August, 1883.

And that, although appellant was, by the proper vote, at the April election, 1882, chosen for a second term as justice, not having filed the bond or taken the oath required by law, he was not by such election rendered ineligible to the office of treasurer.

On the other hand, it is contended by appellee that the ineligibility has reference to the right to be voted for, and that as the term for which appellant had been elected a justice of the peace in 1878 had not expired on the day of election in November, 1882, all of the votes cast for him counted for nothing, and that the subsequent expiration of such term did not render him eligible to the office of treasurer, the term of which did not commence until August, 1883. And further, that having, with his knowledge and consent, received the votes for the office of justice of the peace in April, 1882, and having received a majority of the votes, he was elected, and thus rendered ineligible for four years to hold the office of county treasurer, although he declined the commission, and refused to file a bond, take the oath, or accept the office of justice of the peace.

These conflicting positions are maintained with much learning and ability by the counsel for the respective parties.

After a careful and full examination, we have reached the conclusion that the position of appellant is the correct one in this case, and that the court below erred in its conclusions of law, so far as they relate to the ineligibility of appellant.

"Legally qualified" is the meaning that should be given to the word eligible, as used in the section of the Constitution under consideration.

"Office" has been defined to mean public employment, and

its legal meaning to be, an employment on behalf of government in any station of public trust; a place of trust, by virtue of which a person becomes charged with the performance of certain public duties. 5 Wait's Actions and Defenses, p. 1, *et seq.*, and authorities cited. With this definition of the words "eligible" and "office," the constitutional provision may be read as follows: No person elected to any judicial office shall, during the term for which he shall have been elected, be legally qualified to be employed on behalf of government in any station of public trust, other than a judicial office. In other words, be legally qualified as an officer, to perform the duties of a public office, other than judicial.

This interpretation disposes of one branch of the case, viz., the alleged ineligibility of appellant on account of his term as justice, which expired on the 29th day of November, 1882, more than eight months before the beginning of the term of office as county treasurer, for which he received a majority of the votes at the November election, in 1882.

When appellant entered upon his term as justice of the peace on the 29th day of November, 1878, he became, during the continuance of that term, disqualified to hold and perform the duties of any public office except a judicial one. But while he could not, during that term, hold or perform the duties of a public office other than judicial, it does not follow that he might not, during that term, be legally voted for and chosen to an office, the term of which would not begin until after the expiration of the judicial term as justice. Suppose that the judicial term had ended on the 8th day of November, 1882, or on the 7th day of November, 1882, the day of the general election, could it be said with reason that appellant might not have been voted for, and legally chosen to, the office of county treasurer for a term to begin in August, 1883? If so, then the office of justice of the peace disqualified him for holding and performing the duties of that office, not only during the term for which he was elected a justice of the peace, but for almost two years after the expiration of that term. Such

a construction would make the Constitution read that no person elected a justice of the peace shall, during the term for which he shall have been elected, be eligible to be voted for, for any office except a judicial one. Such a construction, we think, is not compatible with sound reason nor a proper interpretation of the Constitution.

We are cited by appellee's counsel to a number of authorities, which, they contend, support their interpretation of the constitutional provision. The questions for decision in the case at bar are before this court for the first time, and hence, so far as this court is concerned, we are upon untrodden ground. Isolated expressions are found in some of the earlier cases, but they will be found to be purely *dicta,* so far as they in any way bear upon the questions in this case. They were not necessary to the decision of the questions before the court, and were evidently made without any thought of deciding or intimating a decision of the questions here involved. We notice those cited:

*Waldo* v. *Wallace,* 12 Ind. 569. Wallace was the mayor of the city of Indianapolis. During the continuance of his term of office as such, he resigned, became a candidate, and received the highest number of votes, for the office of sheriff for Marion county. The question for decision, and the only one decided, was, could he, during such term, hold and discharge the duties of the office of sheriff. It was decided that he could not. Of the correctness of this decision we have no doubt, but this is not the question before us in the case at bar.

*Gulick* v. *New,* 14 Ind. 93. The facts in this case are the same, substantially, as in the case of *Waldo* v. *Wallace, supra.* In this case, it was decided that Gulick, the competitor of Wallace for the office of sheriff, was entitled to the office because of the ineligibility of Wallace. HANNA, J., used this language: "Wallace, the person shown by the record to have been the competitor of Gulick, was ineligible to the office of sheriff at the date of the election." In construing this lan-

guage, it must be remembered that Wallace's term of office as mayor had not expired, and would not expire before the beginning of the sheriff's term to which he claimed to have been elected. At the time the proceeding was instituted, the term for which he had been elected mayor had not expired; Wallace had abandoned it by a resignation, and was assuming to act as sheriff. It was not necessary to decide, and the language used shows no attempt to decide, that if Wallace's term as mayor had expired before the beginning of the sheriff's term, he might not have been chosen to, and legally performed the duties of, the latter office. PERKINS, J., in the same case, speaking of the ground upon which the lower court based its rulings, used language similar to that above quoted from HANNA, J. Without disapproving or giving sanction to the position of the lower court, the judge, subsequently speaks of the ineligibility of Wallace at the time he was voted for, for the office of sheriff, and in another portion of the opinion, of his disability to *hold* the office of sheriff. The question, and the only question, before the court for decision, was the right of the minority candidate to the office, Wallace being ineligible to hold it. From the language used by the learned judge in deciding that question, we can not tell what his opinton was upon the question of ineligibility under the Constitution; whether it applies to the right to be voted for, or to the right to hold and discharge the duties of the office. *Howard* v. *Shoemaker*, 35 Ind. 111.

In May, 1869, one Sparks was elected mayor of Jeffersonville for the term of two years. On the 11th day of January, 1871, before the expiration of the two years, he was elected by the Legislature a director of the Southern prison, and, having qualified, entered upon the discharge of the duties of that office. In May, 1871, he was re-elected mayor, and took upon himself the discharge of the duties of that office. The eligibility of Sparks for the office of prison director was one of the questions before the court. It was decided that he was not eligible. This was manifestly correct under

former decisions, as the time for which he had been elected mayor had not expired at the time he entered upon the discharge of the duties of director. DOWNEY, C. J., in delivering the opinion, said that Sparks was ineligible to the office of director of the prison during the term for which he was elected mayor in 1869, and consequently ineligible when he was elected by the Legislature in January, 1871. This is not authority in support of appellee's position. It is rather against it. The ineligibility at the time of the election by the Legislature, seems to be made dependent upon the ineligibility to take and hold the office of director.

It will be seen from this brief review of the cases in this court, that each grew out of an attempt to take and hold another office during the term of a judicial office. In this respect, they differ with the one in hearing. The decisions made in the several cases are authority in all cases of similar facts, but are not applicable to a case like this, so dissimilar in facts.

We are also referred by counsel for appellee to the following cases:

*Searcy* v. *Grow*, 15 Cal. 117. Grow was returned as elected to the office of sheriff. His right to hold that office was contested on the ground that at the time of his election he was postmaster. He had resigned that office at the time of his qualification as sheriff. The section of the Constitution upon which the contest was based is as follows: "No person holding any lucrative office under the United States or any other power, shall be eligible to any civil office of profit under the State," etc. The court decided that the word "eligible," as used in the above constitutional provision, is an inhibition upon being chosen, and that Grow could not hold the office of sheriff, although he had resigned the Federal office.

*State, ex rel.,* v. *Clarke*, 3 Nevada, 566. This case arose under a constitutional provision similar to that in the Constitution of California, above set out. The case in its facts is similar to the case in 15 Cal., *supra*. The decision

of the court is also similar. It was held that, while the purpose of the provision in the Constitution is to prevent the holding of a State and Federal office at the same time, in order to carry out the intent of the convention that formed the Constitution, the word "eligible" should be given a more extended signification than is generally given to it, and should be held to mean incapable of being chosen, and incapable of holding. The judge, in delivering the opinion, uses substantially the following language: The etymology of the word, and the meaning generally given to it by the best English authors, would hardly justify this interpretation; but the word, as used in various constitutions, seems to justify this broader and more comprehensive interpretation. These cases are in point in support of appellee's position, that the word "eligible" has reference to the capability of being chosen. But we are not satisfied with the conclusions reached in these cases, nor with the reasoning by which they were reached. We think that the view we have adopted is supported by better authority, and the better reason. It has been decided by the Supreme Court of Wisconsin that a person, not an elector of the State, is ineligible to hold a public office therein, although the Constitution and statutes of the States do not expressly so ordain, and that, in the absence of a constitutional or statutory provision on the subject, such ineligibility goes only to the *holding* of the office, and hence, that if an alien, who is not an elector, receives a plurality of votes for an office, he may lawfully hold and exercise the same, if by naturalization his disability is removed before the commencement of the term of office to which he has been elected. *State, ex rel.,* v. *Smith,* 14 Wis. 497 ; *State, ex rel.,* v. *Murray,* 28 Wis. 96 (35 Am. R. 638) ; *State* v. *Trumpf,* 50 Wis. 103. In the case last cited, it appears that one Geilfuss received a majority vote for treasurer of the city of Milwaukee. At the time he was voted for, he was an alien, and hence, under the decision in 14 Wis., *supra,* was ineligible to the office. Before the beginning of the term of office to which he was chosen, he was duly admitted to

Smith *v.* Moore.

citizenship of the United States, and at the proper time filed
his bond, took the required oath and demanded the office.
The court held that he was entitled to it, the ineligibility
having been removed by naturalization before the beginning
of the term.   See also *Privett* v. *Bickford,* 26 Kan. 52 (40
Am. R. 301).

In different provisions of the Federal and State Constitu-
tions, we find various inhibitions and various uses of the word
" eligible."   In some instances, it is apparent that they relate to
the *holding* of office ;  in others, it is just as apparent that they
relate to the right and capacity to be chosen to an office.   Thus,
in section 2, of article 1, of the Constitution of the United
States, it is provided that no person shall be a Representative
who shall not have attained to the age of twenty-five years,
and been seven years a citizen of the United States, and who
shall not, *when elected,* be an inhabitant of that State in which
he shall be chosen.

It is very plain that, under this provision, the person elected
must be an inhabitant of the State when elected.   On the
other hand, persons have been admitted as members of the
House, who were of proper age at the beginning of the term
for which they were elected, although they were not of such
age when elected.   So, too, section 3, of the Fourteenth Amend-
ment to the Federal Constitution, provides that no person
shall be a Senator or Representative in Congress who, hav-
ing previously taken an oath as a member of Congress, etc.,
to support the Constitution of the United States, shall have
engaged in insurrection or rebellion, etc., against the same.
But Congress may, by a two-thirds vote, remove such disability.
Under this provision, as stated by Judge McCRARY, it has
been the constant practice of the Congress of the United
States since the Rebellion, to admit persons to seats in that
body who were ineligible at the date of the election, but whose
disabilities had been subsequently removed.   McCrary Elec-
tions, section 258.

It may be that these rulings of Congress have not the

same weight as judicial determinations, but they are entitled to very great respect. Section 7, art. 4, of the Constitution of this State, fixes the qualifications of members of the General Assembly. These qualifications are all, in plain language, made to relate to the election. We call attention to these sections because they show, as we think, that when the intention was to fix qualifications and limitations to the election, it has been plainly stated, and that when such expressions as "eligible to office" are used, they relate to the holding of office.

Section 2, art. 6, of the State Constitution, provides that no person shall be eligible to the office of clerk more than eight years in any period of twelve. Here the phrase "eligible to office" has reference to the qualification to hold the office, and not to the election; hence it has been held that while a person might properly be elected, he could not hold beyond the eight years. *Carson* v. *McPhetridge*, 15 Ind. 327. And, so, "eligible to any office," as used in the section of the Constitution under consideration in this cause, has reference to the qualification to hold office, and not to the choosing or election to such office.

We conclude therefore, that the term for which appellant was elected a justice of the peace in 1878, having expired on the 29th day of November, 1882, he was and is qualified to hold the office of county treasurer, the term of which commenced on the 15th day of August, 1883, and that, having received a majority of the votes for such office at the general election in 1882, he is entitled to the office.

It is insisted, however, and the court below so decided, that appellant is disqualified for the office of county treasurer because, at the spring election in his township in 1882, he was voted for, and received a majority of the votes for the office of, justice of the peace, the term to begin on the 29th day of November, 1882, although he did not accept the commission, file a bond, take the oath, or in any way accept such office, but declined it. We can not adopt this view, because we do not think it in harmony with a proper interpretation of the

provision of the constitution, or with the intent of the framers of that instrument and the people in its adoption, and because it leads to a "*reductio ad absurdum.*" In the construction of statutes and constitutions, the prime object is to ascertain and carry out the purpose and intent of the authors. To do this, the words used in the instrument should be first considered in their literal and ordinary signification. But, if by giving them such a signification the meaning of the whole instrument is rendered doubtful, or is made to lead to possible injustice and contradictions, or absurd results, the intent as collected from the whole instrument must prevail over the literal import of terms, and control the strict letter of the law or constitution. *State, ex rel.,* v. *Mayor, etc.,* 28 Ind. 248; *Baker* v. *Kirk,* 33 Ind. 517; *McDonel* v. *State, post,* p. 320; Smith Stat., section 488; *People, ex rel.,* v. *Potter,* 47 N. Y. 375, and authorities cited. As we have seen, the provision of the constitution under consideration provides that "No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any office," etc.

The language of the section is not, that a party shall be ineligible during the time for which he shall have been elected, but during the *term* for which he shall have been so elected. This, we think, implies that there shall be a term by which the ineligibility shall be measured, and that the term in contemplation begins, and can only begin, with the acceptance of the office by proper qualification. It is contended, on one side, that the purpose of the convention in the adoption of this provision was to insure a stable judiciary; that by thus rendering the judges ineligible, the result is to keep them in their places during the term for which they may have been elected. On the other side, it is insisted that the purpose was to keep the judges of the courts free from political alliances, and prevent them using their positions as a means of acquiring other offices. Judging from the debates, we might conclude that the convention had both objects in view. However that may be,

the section, without doubt, was meant to apply to judges in office, and not to persons who may be chosen simply, but never qualify or enter upon the discharge of official duties. In order, then, to carry out the purpose and full intent of the section, the word "elected," as used therein, can not be taken in the narrow sense contended for by appellee, but must be construed to include, not only being chosen to, but an acceptance of, the office.

Let us suppose that A. and B. are rival aspirants for an office not judicial. In order to render B. ineligible to that office, and thus dispose of him as such rival, A. procures the voters of B.'s township to vote for him for the office of justice of the peace. Having received a majority of the votes, A. contends that B. is elected to that office, and, without accepting or qualifying, is rendered ineligible to the other for the period of four years. Such a contention on the part of A. would strike the common understanding as entirely untenable and unreasonable. Nor could it make any difference whether such election might be with the knowledge and consent of B. or without his knowledge.

An office is not obtained nor held by contract. McCrary on Elections, 216; Pomeroy Const. Law, sec. 547. It can not be said, with reason, that such consent to be voted for is, in any sense, an acceptance of the office. Until the consenting party is known to have received a majority vote, there is nothing for him to accept. If being voted for and receiving a majority of the votes is an election, in the sense in which the word "elected" is used in this section of the Constitution, it can make no difference whether such votes are cast with or without the knowledge and consent of the party voted for. To say that if the votes are cast with the knowledge and consent of the party voted for, he is thereby elected, and if, without such knowledge, he is not elected, is to depart from the literal signification of the word "elected," as contended for by appellee. To adopt this view, it would become necessary to construe the word "elected," and make the Con-

stitution read: No person elected, with his knowledge and consent, to a judicial office shall be eligible, etc. And further, it would impose upon the courts, in every case of contest like this, under this section, the unreasonable and difficult duty of deciding whether or not the party thus elected was voted for, with his knowledge and consent. Other questions are argued by counsel, but it will not be necessary for us to consider them.

Without further extending this opinion, we hold that appellant was eligible to the office of county treasurer to which he was chosen, is entitled to it, and that the court below erred in its conclusions of law. The judgment of the trial court is therefore in all things reversed, at the costs of appellee, and the cause remanded, with instructions to that court to make its conclusions of law, and render judgment in accordance with this opinion.

HAMMOND, J., was absent during the consideration of this cause.

### DISSENTING OPINION.

ELLIOTT, J.—In my judgment our own cases have given a construction to section 16, of article 7, of our Constitution, and their interpretation is, as I think, correct in principle and sustained by authority.

There are points decided in *Waldo* v. *Wallace*, 12 Ind. 569, and *Gulick* v. *New*, 14 Ind. 93, to which I yield assent only upon the rule of *stare decisis*. These cases, however, have not only been again and again approved, but the prevailing opinion in the present case also recognizes them as correct expressions of the law, and as this is done they ought, I deferentially submit, be taken in their full force and not stripped of their only support. The central position in these cases is that the term "eligible" refers to the time of the election; this proposition is assumed, and upon it the cases are built. It is logically inconceivable that electors should be required to take notice of ineligibility at any other time than that at which they cast their votes. It is impossible to make anything else of these decisions than a bundle of inconsistencies upon any other

basis; without it the reasoning is foundationless. The whole theory of the decisions, the entire framework of the opinions, and the language of the writers, refer to the time the electors cast their ballots. It is then that the candidate must be eligible; it is then that he must have capacity to receive the suffrage of the voters. Subsequent cases unhesitatingly give this effect to these decisions. In *Carson* v. *McPhetridge*, 15 Ind. 327, it was said: "The term eligible, as used in our Constitution, relates to capacity of holding, as well as the capacity of being elected." Can anything be clearer than that this means that the person voted for must be eligible when elected as well as eligible to hold after he is chosen? In *Jeffries* v. *Rowe*, 63 Ind. 592, the court thus expressed its view: "The term eligible means, not only eligible to be elected to the office, but also eligible to hold it after the election." The decision in *Howard* v. *Shoemaker*, 35 Ind. 111, turns upon the meaning of the constitutional provisions under discussion, and it was held that eligible means eligible at the time of the election. The language in which the controlling and pivotal proposition of the case is stated is this: "The mayor of a city is a judicial officer within the meaning and intent of sec. 16, art. 7, of the constitution of the State, and that, therefore, Sparks was ineligible to the office of director of the prison during the term for which he was elected mayor in 1869, and consequently ineligible when he was elected by the Legislature in January, 1871." In *Reynolds* v. *State, ex rel.*, 61 Ind. 392, the court held that an information filed in proceedings in the nature of a *quo warranto* by one claiming an office, was bad, because, to borrow the language of the opinion, "it did not contain any averment, either that the relator was eligible, or of the facts which would have shown that he was eligible, *at the date of said election.*" In the recent case of *State, ex rel.*, v. *Bieler*, 87 Ind. 320, the case cited is expressly approved. Bouvier, Abbott and Lawson adopt the definition of the word given by our cases, and say that it means capacity to be elected as well as to hold. In the case of *Searcy* v. *Grow*, 15 Cal. 721, it is said: "We un-

derstand the word eligible to mean capable of being chosen—the subject of selection or choice." A forcible illustration is given in the opinion in that case, which I borrow: "Suppose a man, when elected, under sentence and conviction for crime—if such a case can be supposed—would a pardon before qualification give him a right to hold the office?" In the case of *State* v. *Clarke*, 3 Nevada, 566, the decision is that a person ineligible at the time of the election can not be legally elected although before the time comes for him to take the office he becomes eligible. In the cases of *Miller* v. *Board, etc.*, 25 Cal. 93, and *People* v. *Sanderson*, 30 Cal. 160, and *Searcy* v. *Grow, supra,* the same point is decided. The case of the *Parker* v. *Smith*, 3 Minn. 240, also holds that where one is required to be eligible to hold office, the eligibility should be consummate at the time of his election. I think that *State, ex rel.,* v. *Murray*, 28 Wis. 96, will, when carefully studied, be found to be not hostile to the position here taken. In that case, it was admitted that "The term 'ineligible' means as well disqualification to hold an office, as disqualification to be elected to an office;" and it was said that the question was not affected by any constitutional or statutory provision. The real point decided was, that the general rule does not apply in cases where the disqualification is one which the person may remove by his own act. I quote from the opinion: "In my judgment it is not that a person who is not an elector only because of some disqualification which he has the power to remove at any time, is thereby rendered ineligible *to be elected* to a public office for a term which is to commence at a future time." It is obvious that the decision does not apply here, because we have a constitutional prohibition, and because the disqualification is one which the person can not remove. A constitutional barrier can not be thrown down. What is said of the case just cited is true of the Kansas case built upon it. In *State, ex rel.,* v. *Smith,* 14 Wis. 497, Chief Justice DIXON, speaking for the court, said that there were two questions in the case, and thus stated the first: " 1st. Whether the defend-

ant, being an alien and not a qualified elector at the time of his election, was eligible to the office," and assumes in the entire argument that the eligibility refers to the time of the election. In a work of recognized worth it is said: "If an election is made of a person, who is ineligible, that is, incapable of being elected, the election of such person is absolutely void." Cush. Parl. Law, section 175. This author recognizes the difference between disabilities which may be removed by the act of the party, and those which the person can not divest himself of, and says that the latter prevents a valid election. He also says, "where the following terms are used, namely,—'shall be incapable of being elected;'—'shall be eligible to a seat;'—'shall be eligible as a candidate for;'—'shall be ineligible;' the disqualification relates to the time of election." Cush. Parl. Law, sec. 78.

It is, as I read the decisions, a mistake to suppose that the cases of *Gulick* v. *New, supra, Waldo* v. *Wallace, supra, Carson* v. *McPhetridge, supra,* and *Howard* v. *Shoemaker, supra,* do not give meaning and effect to the constitutional provisions here under consideration. The vital question in these cases was the construction of that provision. It was the important, the controlling question; without a decision of it no conclusion was logically possible. Upon it the cases turned. The whole provision was the subject of discussion. The questions in those cases were not as to mere individual rights, nor were they confined to mere isolated and collateral questions of individual eligibility—not these by any means—but the question which controlled the decisions and gave them tone and character was as to the force and meaning of this provision of our organic law. I see not how the conclusion can be escaped, that the question as to the meaning of this provision has been forever set at rest by judicial decisions.

It seems to me that the question has not only been decided, but that it has been correctly decided. The purpose of the framers of the Constitution was to prevent one chosen to a judicial office from going before the people for any other

Smith v. Moore.

than a judicial office. This was the view of this court in the first case which came before it, involving a discussion of the constitutional provision. It was said in that case of the person who received the highest number of votes for the office of sheriff: "Wallace, having voluntarily accepted a position under that law, was, by that act, and by force of the constitutional prohibition, placed in a condition that his mind was left free to discharge judicial functions, for the term for which he accepted, without being disturbed by seeking preferment, for the time being, in either of the other departments." This is a clear expression of the views of the court, and it reflects the intention of the framers of the Constitution, for they meant that during the term of the judicial office no disturbance of the judge's mind should be caused by political aspirations or contests. In speaking of a similar provision in the Constitution of California, it was said in *People* v. *Sanderson*, 30 Cal. 160, that "This provision of the Constitution, so far as it relates to the judicial department of the State, is, in our judgment, eminently wise. One of its objects seems to have been to confine judges to the performance of judicial duties; and another to secure them from entangling alliances with matters concerning which they may be called upon to sit in judgment; and another still to save them from the temptation to use their vantage ground of position and influence to gain for themselves positions and places from which judicial propriety should of itself induce them to refrain." The purpose of the Constitution was to keep judicial officers, during the time they are serving as such, from becoming candidates for office, and the mischief intended to be prevented is that of a judge, holding in his hands personal interests and property rights with power to favor attorneys and parties, or to annoy and injure them, from entering a contest where such power might give him undue influence or lead to unjust favoritism and corrupt results. The evil against which the constitutional provision is directed is the entrance into the political contest by one who is at the time a judicial

officer.   The prohibition shuts the judicial officer from the political race.   If he be such an officer, he can not be a contestant.   In some of the counties of the State, ministerial officers are elected nearly two years before they can be inducted into office (this has occurred because of changes in the statutes and by amendment to the Constitution changing the time of elections), and if the construction of the Constitution for which I am contending be not correct, then a judge may be a candidate, may be elected and yet serve as judge for two years, or until the time the ministerial office is entered into, and surely the Constitution never meant to permit such a result.   But take the ordinary case, officers are elected in November; they usually become contestants weeks before, sometimes months, and not unfrequently years before the election, and if a judge becomes a competitor for the office, he is during all this period engaged in a political strife, the very thing the Constitution intended to prevent.   The only way to avoid such a result is to give effect to the plain language of the Constitution and hold that a judge can not be a competitor in a strife for political preferment, but that while he is a judge he must "beware of an entrance" into a political contest.  This is the result the Constitution was intended to accomplish, and the purpose is a wise one, for judges ought not to be allowed to be scramblers for political places.   The judge must wait until his term of office expires before he can enter the strife for political office, and as long as he is barred from entering into a contest, he is not eligible.

In this case, the appellant was still in office by virtue of a prior election and qualification, and was also an officer elect, having been, at his own will, chosen his own successor.   I can not escape the conclusion that having been elected at his request, whether express or implied is not material, he became ineligible to election to a ministerial office.   It can not be doubted that when it is said of one that he is elected to an office, it is ordinarily meant that he has been chosen or selected.   It is never meant, I think it not too much to say,

that he has been chosen and has also been inducted into office, or has qualified by giving bond and taking an official oath. All will agree, I dare say, that as to the public, the candidate who has been legally chosen is elected when so declared by the proper authorities. As to the public then, the question is without difficulty, for the candidate declared chosen is elected.

A citizen, however, has individual rights, and it would result in injury and lead to injustice to declare that whenever he is chosen to the office of justice of the peace, or any other judicial office, he can seek no political preferment, even though he may have been chosen against his will. A construction of the Constitution that would result in making a man a judicial officer against his will would put it in the power of those desiring to obstruct his way to other offices to disfranchise him, and this the Constitution never intended should occur. We can not, therefore, I agree, hold that a man selected or chosen against his will or consent is, so far as concerns his own rights, elected within the meaning of the Constitution, however it may be as to the public.

I agree, too, that there must be some acceptance on his part. Here comes the point of divergence upon this branch of the case. The majority of the court think that acceptance can only come after election and by qualification, and I, that it may come before as well as after, and that election and qualification are essentially distinct and different things. To my mind it is clear that consent or acceptance may be given as effectually before as after election; that an acceptance is acceptance whensoever made.

I can not see that it is any more difficult to prove acceptance before an election than it is to prove it afterwards. In any event, it is a question of fact to be determined, like all other questions of fact, upon evidence. If it leads to a *reductio ad absurdum* in the one case, to hold consent essential, it no less does so in the other. It seems to me that it is much more unreasonable to permit a man to cast aside an office which he has sought, after he has secured the votes

of the electors, by his own efforts, than to hold that when he has done this he must abide the consequences of his own voluntary act. If men are not held to keep what they have sought and obtained, they are at unrestrained liberty to lightly toss about offices conferred upon them at their own solicitation.

If the view which I take adds, which I deny, a provision to the Constitution, so, I say with deference, does that of the majority, for it in effect adds the provision "and qualified." If for this reason one theory is erroneous, so also is the other, for the one adds the element of qualification, which the Constitution itself makes a distinct and different thing.

We add nothing to the Constitution in either case. If my view is adopted, then we say the provision does not apply to an individual who has not assented to his selection; if the view of the majority is adopted, then we say that it does not apply to one who has not consented and evidenced his consent by qualifying. In neither case is there addition or subtraction; simply and only a denial of applicability to an individual who has not assented. This objection lies not against either theory, but if in this I am in error, then, surely, I am not when I affirm that if it lies against one, so it does against both, and this would drive us to stand on the bare words of the Constitution, and to hold it applicable whether there was or was not assent before or after the election.

Acceptance is the vital element; without it the candidate voted for and chosen is not within the purview of the constitutional provision. But whether this acceptance precedes or follows the election is not material. Assent on the part of the individual brings him within the prohibition, gives it applicability to him. This, I understand, we all affirm, but the majority think that the only evidence of binding assent is the qualification, for it is said that "the term in contemplation begins with the acceptance of the office by proper qualification." I heartily agree that the term contemplated is that to which the person is chosen with his assent, but can not

think that assent implies or requires qualification; I believe that election precedes qualification.

Our statutes make a clear and broad distinction between election and qualification. Our Constitution does so in no uncertain terms. It declares that "Every person elected or appointed to any office under this Constitution shall, before entering on the duties thereof, take an oath or affirmation to support the Constitution of this State and of the United States, and also an oath of office." Is it not clear from this that election precedes qualification, that before a man can qualify he must be elected? It is manifest that election and qualification are as distinct as things pertaining to one general subject can possibly be. If, then, one must be elected before he can qualify, can it be logically conceivable that in order to make it appear that he was elected within the meaning of the Constitution it must be shown that he qualified? To hold this is to reverse the order of things established by our organic law, our statutes, and our decisions.

Our Legislatures, through a long series of years, have used the word "elected" in a uniform sense, and have never, so far as I can find after a somewhat careful search, used it as meaning selection and qualification. Thus, in the section of the statute prescribing the duties of the board of canvassers, it is declared that "Such board shall declare the person having the highest number of votes given for any office to be filled by the voters of a single county duly elected to such office." R. S. 1881, sec. 4718. In another section it is written: "Where any person is elected to an office," not commissioned by the Governor, the clerk shall issue a certificate of election. But further quotations are unnecessary, for all statutory provisions make like use of the word.

Sedulous care has been taken by the framers of our Constitution and laws to confine the word "elected" to its popular and legal signification, and to contradistinguish the term "elected" from the term "qualified." Especially is this apparent, where the purpose has been to prevent a vacancy in

office. In all such cases there is a careful conjunction of the terms "elected" and "qualified." Courts have with equal care marked this distinction. It is the rule that if one is elected to office and dies before qualification, there is a holding over, but if he dies after election and qualification, there is no holding over, but a vacancy. *People* v. *Lord,* 9 Mich. 227 ; *State, ex rel.,* v. *Seay,* 64 Mo. 89 (27 Am. R. 206). Many cases might be cited to show that the courts never use the word "elected" as including "qualified." *Clarke* v. *Irwin,* 5 Nev. 111 ; *State, ex rel.,* v. *Tucker,* 54 Ala. 205 ; *Magruder* v. *Swann,* 25 Md. 173. It would ruffle the current of judicial opinion, do violence to language, and throw into hopeless confusion our constitutional and statutory law, to hold that one can not be deemed elected until he has qualified. No such result will follow by holding that as to the public the candidate chosen is elected, and as to the individual chosen that if he assented, before or after election, he is within the Constitution and bound by its terms.

The conclusion for which I contend is the only one which will effect the purpose of the makers of the Constitution. They never meant that one chosen to a judicial office should wait until the time for the induction into place arrived before it could be said that he was elected. They never meant that one chosen might, during the time intervening between his selection and induction or qualification, become a candidate for a ministerial office. They never meant that one so chosen should in this interim play fast and loose ; nor did they mean that one so chosen might have it in his own power to make the provision apply or not as he himself willed. If qualification is necessary to make the constitutional provision apply, then there is an interim in all cases of a considerable period of time, in others of a long time—long, at all events, as contrasted with the term of office, after the result of the election is declared before the candidate is elected. In some of the circuits, judges were elected in 1882, but their terms can not begin until November, 1884. In such a case can the judge elect, by delaying to qualify until October, 1884, make an interim of

twenty-three months, in which he can not be said to be elected, although at his own solicitation the majority cast their votes for him? If we say that the meaning of elected " is elected and qualified," we have this remarkable result; but if it be held that assent perfects the choice, then this result with all its evil consequences is avoided, for there is then no interim. Suppose —and I do no more than assume what in the main is a real case —assume, I say, that A. was elected judge in November, 1882; that the term does not begin until November, 1884; suppose further that he becomes a candidate for some profitable ministerial office; that for this he is defeated; that then he falls back upon his first election and qualifies for and claims the judicial office held in abeyance. If he be not elected until qualified there is no way to prevent this, and the judge elect is at liberty to take or reject the judicial office, and to use the position given by his selection for selfish purposes. The evil of permitting one elected to a judicial office to hold it in suspension is even greater than that of allowing one actually in office to seek political preferment, for it gives him a position of vantage equally as great because it enables him to use his place as an officer elect to unduly influence voters. It tends to degrade the judicial office, for it suffers it to become a thing to be tossed about at the will of an unworthy man. It either leaves unfilled the office which the voters had done all they could to fill, or else leaves one there whose only claim is that a successor has not been elected and qualified. These are results to be deplored, and which the Constitution intended to prevent. If it be held that a man who has sought the office is elected when the voters give him their suffrages this is prevented, and no wrong is done the public, and surely none to the man who freely sought or accepted what was put before him. If he be held to keep what he sought, he has no reason to complain, but if he be allowed to toss it about at will, the voters have just reason for complaint.

I concur in the conclusion reached by the trial court upon this question, and am for affirming the judgment.