## T. E. DEMAREE v. T. A. SCATES.

ELECTION CONTEST—*County Commissioner*—*"Eligible."* Paragraph 1622 of the General Statutes of 1889 provides that "No person holding any state, county, township or city office, or any employer, officer or stockholder in any railroad in which the county owns stock, shall be eligible to the office of county commissioner." (Gen. Stat. of 1868, ch. 25, § 12.) *Held*, That the word " eligible," as used in the statute means "legally qualified;" that is, capable of holding office. The term, " eligible" as used, does not mean "eligible to be elected " to the office of county commissioner at the date of the election; but "eligible or legally qualified" to hold the office after the election; that is, at the commencement of the term of office. (*Privett v. Bickford*, 26 Kas. 52; *Smith v. Moore*, 90 Ind. 294; *Vogel v. The State*, 107 id. 374; *Brown v. Goben*, 122 id. 113; *People v. Hamilton*, 24 App. Ct. [Ill.] 609; McCr. Elect., § 311.

*Original Proceeding in Quo Warranto.*

AT the general election held on the 8th day of November, 1892, T. E. Demaree was a candidate for the office of county commissioner of Seward county, from the third commissioner district. At the election, he received the highest number of votes for the office, and was by the board of canvassers declared to be elected. About the 17th day of November, 1892, the county clerk of Seward county issued to him his certificate of election, and on the 3d day of December, he subscribed to the oath of office and gave the bond required by law. On the 9th day of January, 1893, being the second Monday of January, and the day prescribed for him to take his seat as a member of the board, he appeared and demanded that the place be surrendered to him. T. A. Scates was the sitting member of the board of county commissioners from the third commissioner district, duly elected and qualified to that position for the term expiring on the 9th of January, 1893. When Demaree demanded that the office of county commissioner be surrendered to him, Scates refused to comply, alleging as the grounds for his refusal that Demaree, at the date of the general election, held a township office in Seward county, viz., the treasurer of the township of Fargo; that at the date upon which he qualified for the office, he held the office of township treasurer, not having resigned therefrom; and that, on the 9th day of January, 1893, when he demanded the office, he also held the office of treasurer of Fargo township. Scates further alleged, as a ground for his refusal to surrender the office, that Demaree, at the general election on the 8th day of November, 1892, gave and offered to give a bribe to an elector to vote for him for the office of county commissioner. The other material facts are stated in the opinion herein, filed on May 6, 1893.

*Edwin A. Austin,* for plaintiff:

The disqualification is against holding the office of county commissioner; it is not against being elected, not against re-

ceiving a certificate of election, not against taking the oath of office, or giving an official bond. See ¶ 1622, Gen. Stat. of 1889; *Privett v. Bickford,* 26 Kas. 52, and cases therein cited. The cases of *Rogers v. Slonaker,* 32 Kas. 191, and *The State, ex rel., v. Plymell,* 46 id. 294, are not in conflict with this doctrine.

*Jas. K. Beauchamp,* for respondent; *T. S. Brown,* of counsel:

The plaintiff was not eligible to the office in question. See ¶ 1622 of the Gen. Stat. of 1889; Bouvier's Law Dict.; Black's Law Dict., term "Eligible"; *Smith v. Moore,* 90 Ind. 294; *People v. Leonard,* 73 Cal. 230; *Searcy v. Grow,* 15 id. 117; *The State, ex rel., v. Murray,* 28 Wis. 96; *The State, ex rel., v. Clarke,* 3 Nev. 566; *In re Corliss,* 11 R. I. 638; *Taylor v. Sullivan,* 45 Minn. 309.

It is submitted that the foregoing authorities establish beyond question the doctrine and the construction, that "eligible to office" means, and can only mean, "eligible to election, or to be elected to the office."

Nor is this construction contrary in any degree to any principle heretofore laid down by this court. *Wood v. Bartling,* 16 Kas. 109; *Privett v. Bickford,* 26 id. 52; *Rogers v. Slonaker,* 32 id. 191.

It is submitted that plaintiff is not eligible to hold the office in question, even had he been eligible to election. See ¶¶ 7075, 7078, 7079, Gen. Stat. of 1889. The case of *Jones v. Gridley,* 20 Kas. 584, is good law, but it has no bearing on this case, being under a different rule. See ¶ 7081, Gen. Stat. of 1889; *The State, ex rel., v. Matheny,* 7 Kas. 327.

The opinion of the court was delivered by

HORTON, C. J.: The principal question in this case is whether T. E. Demaree was eligible to take the office of county commissioner of Seward county on the 9th day of January, 1893. He was elected on the 8th day of November, 1892. At that time he was the treasurer of the town-

ship of Fargo of his county.  Paragraph 1622, General Statutes of 1889, reads:

"No person holding any state, county, township or city office, or any employer, officer or stockholder in any railroad in which the county owns stock, shall be *eligible* to the office of county commissioner."

The contention is over the meaning that should be given to the word "*eligible*" in the statute.  This word is determined by law and other standard lexicographers thus: Black: "Capable of being chosen;" "competency to hold office." Bouvier and Anderson: "This term relates to the capacity of holding, as well as that of being elected to an office." Abbott: "The term 'eligible to office' relates to the capacity of holding as well as the capacity of being elected." 19 Am. & Eng. Encyc. of Law, 397: "Capable of being chosen;" "implying competency to hold the office, if chosen." Worcester: "Legally qualified;" "capable of being legally chosen." Webster: "That may be selected;" "legally qualified to be elected and to hold office." Some law writers define the word as "legally qualified; as, eligible to office;" "legally qualified to hold office;" "electible;" "proper to be chosen;" "qualified to be elected."

Plaintiff contends that "legally qualified" is the proper definition of the word "eligible," as used in this statute.  On the other hand, it is contended by the defendant that "eligible" means "proper to be chosen," "qualified to be elected," "that may be elected;" that is, the candidate for county commissioner must be eligible to the office at the time of the election.

It is a cardinal rule of construction that the words of a statute should be so construed as to carry out the purpose or intent of the lawmakers.  Therefore, if a word in the statute has two or more definitions according to the standard lexicographers, that definition should be given in its construction that will best subserve the general purpose for which it was enacted.  The literal or strict meaning of a word sometimes gives way to its general import.  "The sense and reason of

the law are the soul of the law." (*Intoxicating-Liquor Cases,* 25 Kas. 751.)

In *Privett v. Bickford,* 26 Kas. 52, there was construed the provision of our constitution ordaining that no person who has ever voluntarily borne arms against the government of the United States shall be qualified to hold office in this state until such disability is removed by a vote of two-thirds of all the members of both branches of the legislature. In that case it was said:

"This provision operates upon the capacity of the person to take office, rather than as a disqualification to be elected to an office. So the disqualification is to the holding of the office, and not to the election. There is a marked distinction between a person who is ineligible or incapable of being elected, and one who may hold the office. . . . If our constitution provided that the plaintiff was ineligible to be elected, instead of being ineligible to hold office, the contention of the defendant would be good; but as the ineligibility is not as to the election, but only to the holding of the office, such ineligibility is cured by the subsequent removal of the disqualification."

Although the statute under consideration uses the word "eligible" instead of the words "qualified to hold office," contained in the provision of the constitution referred to, yet, if "legally qualified to hold office" is the meaning that may be given to "eligible," the statute and the provision of the constitution may be construed alike, without difference; that is, as going only to the holding of the office. If the statute is a prohibition merely against any person holding any state, county, township or city office, or any employer, officer or stockholder in any railroad in which the county holds stock, from being elected to the office of county commissioner, then a person "eligible at the election," that is, "capable of being legally chosen," might be elected to the office of county commissioner, *and afterwards accept a state, county, township or city office, or become a stockholder in a railroad in which the county has stock.* If "eligible" is to be construed as to the capacity of being chosen or elected, the statute would be of no actual benefit. It would permit that to be done which

it was evidently the purpose of the lawmakers to prevent. They did not desire a county commissioner to hold another office, or that he should be a stockholder in a railroad in which his county is interested. They evidently intended to prohibit a county commissioner, while holding that office, from being a state, county, township or city officer, and also intended to prohibit him, while holding such office, from being an employer, officer or stockholder in any railroad in which his county owned stock. This was the evil sought to be avoided by the statute. Therefore, to construe the word "eligible" as meaning "legally qualified to hold office," seems to us to better subserve the spirit, as well as the letter, of the statute. Even if we should construe "eligible" as "electible," or "proper to be chosen," or "capable of being elected," then, to carry out the purpose of the statute, as already stated, we must also give "eligible" the additional definition of "legally qualified," or "capable of holding office," or of "acting as a member," because it will not comply with the spirit of the statute to rule that if a person is elected county commissioner, although eligible at the time of his election, *he may, after his election,* accept the other offices referred to in the statute, or become connected with a railroad in which the county owns stock. To give these two different definitions to the word "eligible" in the same statute, and at the same time, would be an unusual construction. Generally, a word in the same statute is not construed in two different ways.

"It has been the constant practice of the congress of the United States since the rebellion to admit persons to seats in that body who were ineligible at the date of their election, but whose disabilities had been subsequently removed." (McCr. Elect., § 311.)

A person may, therefore, hold the office of county commissioner even if, when elected, he is disqualified under the provisions of the statute. If he becomes qualified after the election and before the holding, it is sufficient. Among the authorities which are generally cited to support the definition of "eligible" as meaning "the capacity of being elected," are

*Carson v. McPhetridge*, 15 Ind. 327; *Howard v. Shoemaker*, 35 id. 111; and *Jeffries v. Rowe*, 63 id. 592.   More recently (1883) these decisions have been carefully reëxamined by the supreme court of Indiana, in *Smith v. Moore*, 90 Ind. 294. In that case, a provision of the constitution of Indiana was construed.   That provision reads:

"No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any office of trust or profit under the state, other than a judicial office."

"Eligible" was defined as meaning "legally qualified," and "eligible to any office," as used in the provision of the constitution, was construed as having reference to the qualification to hold office, and not to the choosing or election to such office.   One of the judges, Elliott, J., dissented; but that judge, in the case of *Brown v. Goben*, 122 Ind. 113 (1889), decided, under all the circumstances, it was best to adhere to the decision in *Smith v. Moore*, supra.   He said in his opinion, among other things, that —

"We conclude, therefore, that it must be held to be the settled law of this state that the disqualification must exist at the time the term of office begins, and that the right of the claimant is not affected by the fact that at the time of his election he was ineligible."

The syllabus in that case reads:

"The disqualification must exist at the time the term of office begins, the right of the claimant not being affected by the fact that at the time of his election he was ineligible."

In the case of *Vogel v. The State*, 107 Ind. 374 (1886), the judge writing the opinion (Zollars, J.), speaking for the court, said:

" The constitution provides that 'no person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any office of trust or profit under the state, other than a judicial office.' (Rev. Stat. 1881, § 176.) That the office of justice of the peace is a judicial office, under our constitution and statutes, is well settled.   It was held in the case of *Smith v. Moore*, 90 Ind. 294, that a judicial officer

may be elected to an office not judicial, the term of which will begin after the expiration of the judicial term; in other words, that the disability imposed by the constitution has reference to the taking and holding of the office, and not to the election. That case has been followed and approved in subsequent cases. Marks was eligible to take and hold the office of township trustee, if the term began after the expiration of his term as justice of the peace, although such term may not have expired at the time of the election."

A part of the syllabus reads:

"A judicial officer may be elected to an office not judicial, the term of which will begin after the expiration of the judicial term, the disability imposed by the constitution merely having reference to the taking and holding of the office."

The court at that time consisted of five judges. The decision was unanimous. These decisions of Indiana referred to must be considered of greater force because the earlier decisions of that state construed "eligible to office" as relating "to the capacity of being elected." A more thorough examination of the whole subject induced that court to change its former decisions, and to construe "eligible" as "going only to the holding of the office," and not to mean "incapable of being chosen."

The case of *People v. Hamilton*, 24 App. Ct. (Ill.) 609, is in line with the later Indiana cases, and "eligible to the office of alderman" is construed to mean "legally qualified." The disqualification referred to in the statute in that case is construed to apply to the office and not the election.

In addition to the earlier Indiana cases, we are also cited to *Searcy v. Grow*, 15 Cal. 117, which was followed in *People v. Leonard*, 73 id. 230; *The State, ex rel., v. Clarke*, 3 Nev. 566; *Taylor v. Sullivan*, 45 Minn. 309; and *In re Corliss*, 11 R. I. 638. The decisions in California and Nevada are commented upon in *Smith v. Moore*, 90 Ind. 294, and the reasoning by which the conclusions were reached in those cases was not satisfactory to that court. The same may be said of the reasoning in *Taylor v. Sullivan*, 45 Minn. 309, as applied to the statute under consideration. In the Nevada case, which

construes the word "eligible" as meaning "incapable of being legally chosen," the judge writing the opinion says: "The etymology of the word and the meaning generally given to it by the best English authors would hardly justify this interpretation. But the word, as used in various state constitutions, seems to justify this broader and more comprehensive interpretation." (*The State, ex rel., v. Clarke*, 3 Nev. 566.)

In the Rhode Island case, the language of the constitution is, "that no person holding an office of trust or profit under the United States shall be appointed an elector." The supreme court of that state construed the election by the people as constituting an appointment. With this construction, the disqualification in the constitution of Rhode Island strikes at the beginning of the matter; that is, it forbids an appointment or the election of an ineligible candidate. That case is therefore not in conflict with the views of this court.

The other objections made to Demaree's holding the office of county commissioner were not well taken.

In the case of *Rogers v. Slonaker*, 32 Kas. 191, Rogers's term of office as coroner did not expire until January 14, 1884. He attempted, while coroner, on January 12, 1884, before the expiration of his term, to act as county commissioner. He tried to hold these two offices at the same time. This cannot be done.

In *The State, ex rel., v. Plymell*, 46 Kas. 294, Plymell was ineligible to the office of county commissioner because he continued to hold the office of city clerk. He attempted to discharge the duties of county commissioner. He also tried to hold two offices at the same time.

Forbes, who was elected to the office of township trustee to succeed Demaree, was notified of his election about the 18th of November, 1892. He qualified December 31, 1892. The acts relating to township officers make no provision for any of the offices therein named becoming vacant on the refusal or neglect of the officer elected to give the official bond within the time prescribed by law. (*Jones v. Gridley*, 20 Kas. 584.) On the 9th of January, 1893, at the time that Demaree ap-

peared and demanded his office as a member of the board of county commissioners of Seward county from the third commissioners' district he was "eligible;" that is, he was "legally qualified" to hold the office at that time. He had fully complied with all the provisions of the statute, and Scates should have surrendered to him the office.

The claim that Demaree offered to give a bribe to E. D. Haines, on the 8th of November, 1892, to procure his vote, we do not think is supported by the evidence. It is said that Demaree agreed with Haines to use his influence to relocate a schoolhouse near the center of his school district, in consideration that Haines would vote for him for county commissioner. Considering all the evidence, we do not think that Demaree bribed or attempted to bribe Haines by what he did about the relocation of the schoolhouse.

Judgment of ouster will be rendered against the defendant, with costs.

JOHNSTON, J., concurring.

ALLEN, J., dissenting: The courts seem to have experienced some difficulty in defining the word "eligible," as used in statutory provisions similar to the one under consideration in this case as well as in the various state constitutions. Taken by itself, the meaning of the word, to me, appears plain. Its derivation from the Latin word *eligere*, to choose, with the suffix *ible*, ordinarily signifying able, or capable of, would seem to give the word, naturally, the signification of able to be, or capable of being, chosen. This signification seems to correspond with its ordinary use in the English language. The definition given by Webster is: "1. Proper to be chosen; qualified to be elected; legally qualified, as, eligible to office. 2. Worthy to be chosen or selected; desirable; preferable; as, an eligible situation for a house. The more eligible of the two evils." Worcester defines it thus: "That may be elected; fit to be chosen; worthy of choice; preferable; desirable. (*Politics.*) Legally qualified; capable of being legally chosen." Black's Law Dictionary gives the

following: "As applied to a candidate for an elective office, this term means capable of being chosen, the subject of selection or choice, and also implies competency to hold office, if chosen." Section 1 of chapter 104 of the General Statutes of 1889 contains the following:.

"In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute: . . . Second. Words and phrases shall be construed according to the context, and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

In the passage of the statutory provision under consideration, two purposes may have been in contemplation — one, a prohibition on the officers and other persons rendered ineligible by the statute from being candidates at the election, and from being voted for at all; the other, a prohibition on the holding by one person of two offices, of the kinds mentioned, at the same time. The intention of the legislature is to be gathered mainly from the language used. It is fair to presume that members of the Kansas legislature have generally a fair understanding of the English language, and especially of the forcible, simple words derived from the Saxon. If the intention had been merely to prevent the holding of the office of county commissioner by a state, county, township, or city officer, or an employer, officer, or stockholder in any railroad, I apprehend there could hardly have been a member of either house to whom the simple Anglo-Saxon word "hold" would not have suggested itself, and who would not have used it in preference to the word "eligible." The meaning of the section would then have been as the majority of this court construes it to be; but it would have read: "No person holding any state, county, township or city office, or any employer, officer, or stockholder in any railroad in which the county owns stock, shall hold the office of county commissioner." Of course, it

is not to be expected that the legislature will in every instance
select words of the most clear and unequivocal meaning, yet
it is not to be presumed that words are used in the statute
without careful consideration of their force and meaning.   On
the contrary, it is to be presumed the legislature has selected
the words it deems most apt to convey its meaning.   The
word "eligible" cannot fairly be said to have a technical
meaning in the law, different from its ordinary signification in
the language.   I think that not only the weight of reason, but
of authority as well, is to the effect that the word "eligible"
has reference to the *status* of the candidate at the date of the
election.   The electors then make their choice.   That choice
should be made from those persons who are eligible, fit to be
chosen, worthy of choice.   It does not seem reasonable that
they should be required to take into consideration changes of
condition, which may or may not arise between the date of the
election and the commencement of the term of office, but that
the person, at the time of the election, should belong to the
class of persons who are eligible.   To this effect are the fol-
lowing cases: *Searcy v. Grow,* 15 Cal. 117; *The State, ex rel.,
v. Clarke,* 3 Nev. 566; *Waldo v. Wallace,* 12 Ind. 569; *Gulick
v. New,* 14 id. 93; *Carson v. McPhetridge,* 15 id. 327; *In re
Corliss,* 11 R. I. 638.   In *Jeffries v. Rowe,* 63 Ind. 592, it
was said: "The term 'eligible' means not only eligible to be
elected to the office, but also eligible to hold it after the elec-
tion." · In *People v. Leonard,* 73 Cal. 230, the court refers to
the case of *Searcy v. Grow,* supra, and says:

"So it appears to us that when we come to consider the
motive which must ·of necessity have actuated the constitu-
tional assembly that enacted the provision which we are con-
sidering, and the cogent and powerful reasons which would
occur to the mind of any earnest thinker why such a restric-
tion should be placed on the holding of office by one man, at
the same time, under more than one government, (such as that
it would tend, if the duties of both offices were onerous, to
the neglect of one or both, or to the undue influence of the
officeholder as a powerful agent of some ambitious president
or head of a department, if the federal office was a lucrative

one, and the like,) that it was clearly intended that one holding a 'lucrative office' under the United States, should not hold a 'civil office of profit' under the state."

The conclusion reached in that case was, that the inhibition applied both to the election and to the holding of the office thereafter; and that if a person, though qualified at the time of the election, afterward became disqualified by accepting a federal appointment, he could not hold both offices. In the case of *The State, ex rel., v. Smith,* 14 Wis. 498, it was held that, although there was no statutory or constitutional provision in that state prohibiting an alien from holding the office of sheriff, a person who was still a subject of Great Britain was ineligible to that office. In the case of *The State, ex rel., v. Murray,* 28 Wis. 96, it was held, that a person who had not declared his intention to become a citizen at the date of the election, but who did so before his term of office commenced, might be elected clerk to the county board of supervisors. The court, however, says:

"In other words, I think that, in those cases as in this, the disqualifications relate to the holding of the office, and not to the election thereto. As a matter of course, none of these remarks are intended to apply to a case where a different rule has been enacted by constitutional and statutory provision."

This case can hardly be considered as upholding the views expressed in the opinion of the chief justice.

In the case of *The State, ex rel., v. Clarke,* supra, the court says:

"We agree with the defendant, that the framers of the constitution intended to prohibit one who was holding a lucrative federal office from holding a state office at the same time; but instead of restricting the meaning of the word 'eligible,' as defendant contends, we think, to carry out the intention of the constitutional convention, we ought rather to give it a more extended signification than is generally given, and, that it means both incapable of being legally chosen and incapable of legally holding."

To my mind, the reasoning of Mr. Justice Elliott, in his

dissenting opinion in *Smith v. Moore*, 90 Ind. 307, is much more clear and convincing than that in the opinion of the majority of the court. The view of the supreme court of Minnesota, as appears in the case of *Taylor v. Sullivan*, 45 Minn. 309, meets my entire approval:

"Our inquiry is as to the meaning of the word 'eligible,' as used in the constitution. In Webster's Dictionary its meaning is defined to be: 'Proper to be chosen; qualified to be elected.' In this, and the cognate words derived from the same source, (the Latin verb '*eligere*,') the idea primarily involved is that of choosing, selecting. It is expressed in our words, 'to elect,' derived from the same Latin word. This primary and strictly proper signification of the word 'eligible' is also its well-understood popular meaning. If we had adopted the form 'electible' for the adjective, instead of following more nearly the form of the verb from which it is derived, the meaning might have been more obvious, but it would not have been different. In *The State v. Murray*, 28 Wis. 96, it was considered to be a fundamental principle of popular government, even in the absence of any constitutional or statutory restriction, that one who is not a qualified elector cannot legally hold an elective office. According to the opinion of Ryan, C. J., in the later case of *The State v. Trumpf*, 50 Wis. 103, this proposition should in principle be more broadly stated, and only such persons as are themselves electors *at the time of the election* should be deemed eligible to office. We think that this must certainly be so considered under a constitution which in effect declares that only such persons shall be eligible to elective offices."

I am entirely satisfied with the decision in *Privett v. Bickford*, 26 Kas. 52, because the provision there under consideration contains the phrase "qualified to hold office," which, of course, refers to the period covered by the term rather than the time of the election. Neither of the other cases appears to me to be decisive of the question in this state. It appears to me that the legislature has plainly said, in substance, that no person holding a township office shall be elected county commissioner. If the spirit of this law requires the courts to hold that no person, who, after election as county commissioner, though qualified at the time, shall hold both that and

a township office at the same time, we still are not required to do away with the rule that is in terms declared in the statute.   I perceive no inconsistency in the construction placed on the word by those courts which hold that the inhibition applies both to the time of the election and to the term of office.